**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jaime L. FERRA, Defendant–Appellant.**

**No. 91–1584.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 17, 1991.

Decided Nov. 19, 1991.

James L. Santelle, Maxine A. White, Chris R. Larsen (argued), Asst. U.S. Attys., Milwaukee, Wis., for plaintiff-appellee.

Julius L. Echeles (argued), Chicago, Ill., for defendant-appellant.

Before BAUER, Chief Judge, and CUDAHY and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Jaime Ferra, a fence who paid for his merchandise with cocaine, received 120 months' imprisonment. After remand for exploration of three subjects, 900 F.2d 1057 (1990), the district court reentered the 120–month sentence, although on substantially different reasoning.

1. The record on the first appeal revealed a conflict between Detective Leger's application for a search warrant and Sergeant Flores' testimony at trial. The warrant issued on Leger's representation that his reliable informant thrice bought cocaine from Ferra, who said there was plenty of cocaine left. Flores testified at trial that he visited Ferra once in the company of "Nicky", a person of unknown reliability who asserted that he had obtained cocaine from Ferra on other occasions.

On remand Leger testified that his "confidential informant" was none other than Flores, described thus to protect his identity while the investigation continued. The three-visit business is untrue, but the district court found that it was a confabulation of what Flores told Leger about his own activities with what Flores told Leger he had learned from Nicky. The district court found that Leger's errors were negligent rather than deliberate. More: Even deliberately inaccurate representations do not invalidate a warrant if the truthful statements establish probable cause. *United States v. Danovaro*, 877 F.2d 583, 587 (7th Cir.1989); cf. *Franks v. Delaware*, 438 U.S. 154, 171–72 & n. 8, 98 S.Ct. 2674, 2684–85 & n. 8, 57 L.Ed.2d 667 (1978). What Flores learned during his single visit establishes probable cause for a search. Had Leger accurately identified Flores as the "informant" and omitted everything else, a warrant would have been forthcoming. The district court therefore properly denied the motion to suppress.

2. Israel Salva testified as Ferra's co-conspirator, which allowed the use of testimony that otherwise would be hearsay, yet the district judge did not find that Salva was indeed a conspirator. On remand the court made that finding, which is not clearly erroneous. The picture is complicated because Salva began cooperating with the police. The judge ruled that he ceased being a conspirator at that point, see 900 F.2d at 1059 and *United States v. Patel*, 879 F.2d 292 (7th Cir.1989), but that statements after Salva changed sides could be admitted against Ferra as adoptive admis-

sions. Ferra has not challenged that decision on appeal.

■ 3. Sentencing is the principal issue on this appeal, as it was the first time around. The district court initially computed Ferra's range under the sentencing guidelines at 41–51 months but imposed a sentence of 120 months, reasoning that Ferra's status as a fence paying in cocaine justified an upward departure. We reversed that decision, holding that the district court must justify the extent of any departure using the structure of the guidelines, and that in particular a court may not impose a greater sentence by departing than it could have imposed had all of the additional conduct been charged expressly in the indictment. 900 F.2d at 1061–64. We pointed out, however, that Ferra's guideline range might have been computed improperly, for it was based on the amount of cocaine mentioned in the indictment (5½ ounces) but should have been based on all cocaine sold during the course of Ferra's scheme. *Id.* at 1063, relying on U.S.S.G. § 1B1.3(a)(2).

On remand the district court determined that Ferra's course of conduct included the sale of more than 500 grams of cocaine. This, coupled with two levels for a managerial role, see U.S.S.G. § 3B1.1(c), increased Ferra's guideline range so that 120 months was no longer a departure. The court reimposed the 120–month sentence. The managerial enhancement is not clearly erroneous; the court could find that Ferra "managed" a stable of thieves by requesting them to supply him with specific merchandise. Although the court could have found that the burglars were independent entrepreneurs rather than Ferra's minions, we do not disturb decisions that could go either way. (Lest there be doubt, however, we reject the prosecutor's argument that an enhancement under § 3B1.1(c) is proper just because a fence, by offering to buy goods, makes burglary more profitable. The guidelines refer to a managerial role; the buyer in an ordinary market transaction is not a "manager." Moreover, we rebuffed an argument of this stripe on the

first appeal, 900 F.2d at 1064, and are surprised to see it resurrected.)

When the police executed the search warrant they found 164 grams of cocaine on the premises, together with about $50,000 in cash and stolen property. A second search turned up another 10 grams. Ferra paid Flores and "Nicky" 21 grams of cocaine for their goods, and he gave Hobbs (a burglar) 28 grams. The district court put the total over 500 grams because Diaz, another burglar, testified at trial that he sold stolen items to Ferra approximately 200 times. If Ferra paid Diaz cash plus one-sixteenth ounce of cocaine each time (as he did with Nicky and Hobbs), then he distributed 354 grams of cocaine to Diaz alone. That put the total comfortably over 500 grams.

Ferra contends that Diaz must have been puffing. They dealt with one another for about eight months, part of which Diaz spent in jail; to reach 200 sales, Diaz must have pulled off more than one job per day. Yet some burglars are hyperactive; whether Diaz was a big-time thief or a big-time liar is for the district judge to decide. Even if we were to discount Diaz's story, the district judge would have been entitled to conclude that Ferra doled out a substantial quantity of cocaine for the cash and merchandise on hand at the time the police arrived. The police recovered more than $40,000 in cash, some $14,000 of which was mingled with cocaine (a dog found the money by scent). This exceeds the wholesale price of a kilogram of cocaine. The 174 grams of cocaine seized by the police, the testimony of the burglars, and the inference to be drawn from the cash and inventory, support the conclusion that Ferra distributed more than 500 grams of cocaine.

AFFIRMED.

CUDAHY, Circuit Judge, concurring in part and dissenting in part.

I agree that the conviction must be affirmed. But the sentence seems to rest on such incredible assumptions that it deserves another look by the able district judge.

The scenario underlying the sentence called for the burglar Diaz to meet with Ferra almost every day, including Sundays and holidays, in order to trade stolen goods for cocaine 200 times over a period of 30 weeks. I suppose it is conceivable for a highly motivated burglar to burgle at such a frenzied pace, but for him to meet and transact business with his "fence" that frequently is simply unimaginable. The alternative rationale furnished by the majority (based on the amount of cash discovered) was discounted by the district court, which must, in any event, make these determinations in the first instance.

The majority too lightly regards the requirement that aggravating factors must be found by a preponderance of the evidence. *United States v. Fonner*, 920 F.2d 1330, 1333 (7th Cir.1990); *United States v. White*, 888 F.2d 490, 499 (7th Cir.1989). In the majority of cases the Sentencing Guidelines provide for stiffer penalties for baseline offenses than federal judges were wont to deliver when their discretion was less restricted. *See* United States Sentencing Commission, *Guidelines Manual* 1.9 (1990) (original policy decisions of Commission projected to lead to 10% increase in prison populations); United States Sentencing Commission, *Annual Report 1989* 66 (policy decisions of Commission embodied in 1989 amendments expected to lead to approximately 5% further increase). If enhancements may be applied at a judge's discretion, Guideline sentencing becomes a one-way street: district judges may impose arbitrarily high sentences, but not arbitrarily low sentences.

I do not suggest that the district judge abused his discretion in imposing sentence on Ferra. But the record makes clear that the sentence is exactly that—an exercise of discretion. This is a practice that the Guidelines do not allow.