**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Michael A. CLEMENS, Defendant–
Appellant.**

**No. 95–1360.**

United States Court of Appeals,
Seventh Circuit.

Argued June 9, 1995.

Decided June 22, 1995.

Judith A. Stewart, Joshua J. Minkler (argued), Office of U.S. Atty., Indianapolis, IN, for plaintiff-appellee.

Kevin Scionti, Roberts & Bishop, Indianapolis, IN, Dale W. Arnett (argued), Winchester, IN, Henry Sheldon, Cincinnati, OH, for defendant-appellant.

Before CUMMINGS, CUDAHY and FLAUM, Circuit Judges.

CUDAHY, Circuit Judge.

Michael A. Clemens (Clemens) pleaded guilty to possession and distribution of marijuana and use of a firearm during a drug trafficking crime in violation of 21 U.S.C. §§ 841(a)(1) & 846; 18 U.S.C. § 924(c)(1). He challenges his conviction on the grounds that evidence was illegally seized from his home. The district court found that the warrant authorizing the search of Clemens' residence was not tainted by an earlier warrantless entry into the residence and was supported by probable cause. We affirm.

### I. FACTS

This case involves an arranged purchase of marijuana, set up by a confidential informant (CI) working with the Quad City Drug Task Force in Richmond, Indiana. On July 16, 1993, the CI, wearing body transmitters, went to David Lambert's place of employment to discuss the purchase of five pounds of marijuana. Lambert was willing to arrange the purchase but told the CI that the

deal could not be done until the following day.

On July 17, 1993, the CI again met Lambert at his place of employment, where Lambert informed the CI that the purchase would involve traveling outside of Richmond. The CI gave Lambert $7,000 which had been provided by the Task Force for the marijuana buy, and the two got into Lambert's car. They were joined by another individual, Terry Mackey, who also gave Lambert a large sum of money and joined them in Lambert's car.

The three men drove to Darke County, Ohio. In Darke County, they went to the home of the defendant, Michael Clemens. When they arrived at the Clemens residence, the CI and Mackey remained in the car while Lambert went into the house. A short time later, Lambert came out of the house with Clemens and two large trash bags, which he placed in the trunk of the car. Lambert then got back in the car, and the three started to drive back to Richmond.

After the car reentered Indiana, police officers stopped it and searched the vehicle. They found that the trash bags, which were still in the trunk, contained 15 one-pound bags of marijuana. The passenger compartment of the car also contained a partially smoked marijuana cigarette and more than $12,000 in currency. Mackey and Lambert were both then placed under arrest.

Officer Mark Smith, a Richmond police officer working with the Task Force, had been monitoring all these events through the body transmitters worn by the CI. After the arrests, Smith contacted the Sheriff of Darke County, Ohio and informed him of what had transpired. The Sheriff sent Darke County police officers to meet with Smith, and after speaking to Smith, the Darke County officers used the information he gave them as the basis for requesting a search warrant for the Clemens residence.

Before the search warrant was issued, however, Smith and about 12 other officers entered the Clemens house to "sweep and secure" the premises. This first "search" took place at 2:00 p.m., but the search warrant for the residence was not issued until 3:20 p.m. The search warrant was executed at 3:40 p.m. and a full search of the house was performed at that time. This second search revealed numerous handguns and rifles, ammunition, 481 pounds of marijuana, explosive devices, scales and more than $2,000 in currency.

Clemens was taken into custody and indicted along with Lambert. He moved to suppress evidence collected during the search of his house, but his motion to suppress was denied. He eventually pleaded guilty to conspiracy to possess with intent to distribute and distribution of marijuana, and the use of a firearm during commission of a drug trafficking crime in violation of 21 U.S.C. §§ 841(a)(1) & 846, and 18 U.S.C. § 924(c)(1), but reserved the right to appeal the denial of his motion to suppress. He now exercises that right, arguing that evidence from the search of his residence should have been suppressed because the search warrant was not based on probable cause.

## II. DISCUSSION

■ Clemens argues that the evidence seized at his house is tainted because the first search was warrantless and the warrant for the second search was not based on probable cause. The district court found that the warrant was not tainted and was based on probable cause. We review this determination for clear error. *See, e.g., United States v. Foxworth,* 8 F.3d 540, 542 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1414, 128 L.Ed.2d 85 (1994); *United States v. Pless,* 982 F.2d 1118, 1124 (7th Cir.1992).

■ The parties have stipulated that the affidavit for the search warrant contained only information obtained *before* the first illegal entry into the house. Thus, the search warrant was not tainted by the first warrantless search. Further, even though evidence might have first been discovered during the initial warrantless search, if the evidence was legitimately rediscovered during a second, valid search, it need not be suppressed. *United States v. Markling,* 7 F.3d 1309, 1315 (7th Cir.1993); *see also Murray v. United States,* 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). The district court was "convinced that any evidence discovered dur-

ing the Sweep & Secure Search was rediscovered during the Warrant Search." Mem. Op. at 6. Further, Clemens does not identify or present argument about any specific evidence that he believes was not discovered or legitimately rediscovered during the second search. Therefore, as long as the second search was supported by a valid warrant, any evidence discovered or rediscovered during the second search need not be suppressed.

However, Clemens argues that the warrant for the second search was not supported by probable cause. He claims that the affidavit on which the search warrant was based contains factual errors, and that when those errors are removed the remaining information is not enough to constitute probable cause.

■ The search warrant was issued on the basis of an affidavit provided by a Darke County Officer named Walker, whose statement was based primarily on information provided by Smith. The general facts contained in the affidavit were:

1. That Smith had contacted the Darke County Sheriff's Office and informed them that he and his Department had arranged and monitored a controlled purchase of marijuana at 4920 Hillgrove–Southern Road, Darke County, Ohio [Clemens' residence].

2. That the CI and another male went to that address while being monitored by officers, and that the CI and the other male then entered the residence and purchased marijuana.

3. That the two were followed back to Indiana, where their vehicle was stopped and searched.

4. That 5 pounds of marijuana were found in the vehicle as well as over $12,000 in cash.

5. That Smith and other officers had been monitoring the house and had observed traffic in and out of the residence.

6. That the informant had advised Smith that the seller was a large male, approximately 300 pounds, and that there were still approximately 95 pounds of marijuana at the residence.

7. That Walker, the affiant, had received information from independent sources within the past two months that a suspected dealer in marijuana had moved into that residence, and that the dealer was working through Indiana.

Mem.Op. at 7.

Clemens argues that because the affidavit incorrectly stated that the CI had gone into the house and purchased marijuana (number 2 above) it was fatally flawed. He also argues that the information that Walker and Smith got from informants is not reliable (numbers 6 and 7 above). These two flaws, he claims, mean that the affidavit does not establish probable cause.

■ A search warrant that contains incorrect information is still valid "if the other information in the application, standing alone, is sufficient to establish probable cause." *Markling*, 7 F.3d at 1316. "Even deliberately inaccurate representations do not invalidate a warrant if the truthful statements establish probable cause." *United States v. Ferra*, 948 F.2d 352, 353 (7th Cir. 1991), *cert. denied*, 504 U.S. 910, 112 S.Ct. 1939, 118 L.Ed.2d 545 (1992). The search warrant here was granted both on information about the actual transaction with Clemens and on tips that the police had received about other transactions at that location. Even without the incorrect statement that the CI actually went into the house, and without the general information about other drug dealing from that address, the affidavit still establishes probable cause. At a minimum, it demonstrates that money had been paid for marijuana, that the seller took the CI to the Clemens house, that someone had gone into the house and come out with marijuana and that the CI (the buyer) and others then left with the marijuana. The district court concluded that this evidence established that the purchase of a large quantity of marijuana had occurred at the Clemens house, which is more than enough for probable cause. We agree. Even without the information that Clemens contests, there was enough information in the affidavit to establish "a fair probability that contraband or evidence of a crime will be found in a particular place." *Markling*, 7 F.3d at 1317. Thus,

although the first search was warrantless, the evidence was subsequently "rediscovered" in a legal search supported by a valid search warrant, and the evidence should not have been suppressed.

For the reasons stated above, the opinion of the district court is hereby

AFFIRMED.