**UNITED STATES of America,
Plaintiff,**

**v.**

**Lee TERRY and Kellie Jo May, Defendants.**

No. 98–CR–20061.

United States District Court,
C.D. Illinois,
Danville/Urbana Division.

March 4, 1999.

**860**

Richard N. Cox, Supervising Assistant U.S. Attorney, Urbana, IL, for plaintiff.

Thomas W. Patton, Assistant Federal Defender, Springfield, IL, for defendant Lee Terry.

Neill Schurter, Rantoul, IL, for defendant Kellie Jo May.

### ORDER

McCUSKEY, District Judge.

This cause is before the court for ruling on Defendant Lee Terry's Supplemental Motion to Suppress (# 20), which was joined by Defendant Kellie Jo May. Following a hearing on December 21, 1998, this court denied Defendant Terry's Motion to Suppress (# 12), which had also been joined by Defendant May. This court ordered additional memoranda by the parties regarding the Supplemental Motion to Suppress. This court now denies the Supplemental Motion to Suppress (# 20).

### FACTS

On September 14, 1998, the Champaign County Schools Credit Union was robbed by two individuals carrying firearms. On October 8, 1998, Defendants Lee Terry and Kellie Jo May were charged by indictment with bank robbery by force or violence (18 U.S.C. § 2113(a), (d)) and using or carrying firearms during and in relation to a crime of violence (18 U.S.C. § 924(c)(1)). In addition, Terry was charged with unlawful possession of a firearm after having previously been convicted under the laws of the United States of a crime punishable by imprisonment for a term exceeding one year (18 U.S.C. §§ 922(g)(1) and 924(e)) and May was charged with unlawful possession of a firearm after having previously been convicted under the laws of the State of Illinois of a crime punishable by imprisonment for a term exceeding one year (18 U.S.C. § 922(g)(1)).

On December 3, 1998, this court granted the Government's oral motion to sever Defendants' trials. Also on December 3, 1998, Terry filed a Motion to Suppress evidence. In his Motion, Terry argued that the evidence seized pursuant to a search warrant of Terry's home should be suppressed because the officers executing the warrant did not knock and announce their presence before entering the home. On December 9, 1998, May was allowed to join in Terry's Motion to Suppress.

On December 16, 1998, Terry filed a Supplemental Motion to Suppress. In this Motion, Terry noted that the search warrant authorized the seizure of cocaine, cocaine paraphernalia and "all monies found in close proximity to the aforesaid items." Terry further noted that no cocaine or cocaine paraphernalia was found in the

residence. Accordingly, Terry argued that the police officers exceeded the scope of the search warrant when they seized a burlap bag containing $126 in U.S. Currency and a red jacket containing $1,060 in U.S. Currency. Further, Terry argued that federal law enforcement agents used this evidence to support the issuance of a federal search warrant authorizing the search of Terry's residence and a metal shed located on the property. Terry argued that the federal search warrant was tainted by the unlawful seizure of the money and, therefore, all evidence found pursuant to that warrant, including two handguns and some ammunition found in the metal shed behind Terry's house, must be suppressed as fruit of the poisonous tree.

A hearing was held on December 21, 1998. At the hearing, May was allowed to join in Terry's Supplemental Motion to Suppress. The Government presented the testimony of four police officers from the Champaign Police Department: Robert Rea, Corbitt Griffith, Troy Daniels, and Scott Swan. Terry presented the testimony of Kenneth Faust. The witnesses testified regarding the execution of the search warrant at approximately 9:25 p.m. on September 16, 1998.

Following the presentation of evidence and the arguments of the parties, this court denied Terry's Motion to Suppress. This court found that the police officers presented credible testimony regarding the entry of the officers into Terry's house to execute the search warrant. This court specifically noted that the testimony of the officers was not completely consistent. However, this lack of consistency in some matters demonstrated to the court that the witnesses were credible regarding their recollection and were not presenting a rehearsed story. This court further found that Kenneth Faust's testimony regarding the entry into the house was not credible. Based upon the credible testimony presented, this court determined that the entry was reasonable under all of the circumstances and did not violate the Fourth Amendment. Accordingly, this court denied Terry's Motion to Suppress.

This court ordered additional memoranda from the parties regarding the issues raised in Terry's Supplemental Motion to Suppress. On January 20, 1999, the Government filed a Memorandum Concerning Defendants' Motions to Suppress (# 28). On February 4, 1999, May filed a Memorandum Concerning Motions to Suppress (# 31) and, on February 5, 1999, Terry filed his Response to the Government's Memorandum (# 32). This court has carefully reviewed the Memoranda filed by the parties as well as the transcripts of the testimony of Troy Daniels and Scott Swan which were filed with the court.

## ANALYSIS

The search warrant executed on September 16, 1999, was issued by an Illinois circuit court judge and was based on information regarding a recent sale of controlled substances from the residence. The search warrant authorized the seizure of:

> Any substance of any color which appears or purports to be cocaine or any of its derivatives; all paraphernalia of any kind including, but not limited to, scales, packaging material such as plastic bags and twist ties, and cutting agents, used for the manufacture or distribution of cocaine; all monies found in close proximity to the aforesaid items; all documents showing indicia of ownership and/or occupancy of 511 Alabama, Champaign, Champaign County, Illinois, a white single story residence with the numbers 511 depicted to the east of the front entrance to residence; all records, ledgers, financial statements, or notations concerning illegal delivery or possession of cocaine and/or individuals involved in illegal delivery or possession of cocaine.

The officers also had a federal arrest warrant for Terry, charging him with the armed robbery of the credit union on September 14, 1998. After police officers en-

tered Terry's residence, Terry was arrested and his home was searched. Police officers searched a bedroom closet and found $126 in a burlap sack and $1,060 in a red jacket. They also found a small amount of marijuana in the same room. Both Troy Daniels and Scott Swan testified that the money was seized pursuant to the search warrant, not because they believed the money was connected to the robbery of the credit union.

## I. PLAIN VIEW DOCTRINE

██ The Government has conceded that the seizure of the money exceeded the precise limitations of the search warrant. However, the Government first argues that the money is nevertheless admissible into evidence under the plain view doctrine. Under the plain view doctrine, if: (1) the officer is lawfully present, (2) an item not named in the warrant is in the plain view of the officer, and (3) the incriminating nature of the item is immediately apparent, the officer may seize the item without a warrant and the item need not be suppressed at trial. *United States v. Bruce*, 109 F.3d 323, 328 (7th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 113, 139 L.Ed.2d 66 (1997) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)). The court in *Bruce* noted that the third element of this test has been modified so that an officer only needs probable cause to believe that the item is linked to criminal activity in order for the plain view exception to the warrant requirement to apply. *Bruce*, 109 F.3d at 328. Accordingly, when the item seized assumes an incriminating or suspicious nature in connection with the crime under investigation, the officers may properly seize the item. *Bruce*, 109 F.3d at 328–29; see also *United States v. Van Dreel*, 155 F.3d 902, 905 (7th Cir.1998).

In this case, the police officers were clearly authorized to search Terry's residence for the items listed in the search warrant. Accordingly, they could properly look into a jacket and burlap bag. The officers were also there to arrest Terry for armed robbery of the credit union. Based upon *Bruce* and *Van Dreel*, the police officers would have been justified in seizing the currency if they had probable cause to believe that the currency was linked to the armed robbery of the credit union. However, both Daniels and Swan testified that, without any doubt, the currency was seized based upon the search warrant and not based upon a belief that the currency was incriminating evidence of the armed robbery of the credit union. Both of the witnesses were adamant that the money was not seized because they believed it was connected to the credit union robbery.

██ The Government contends that the existence of probable cause must be judged by an objective standard and not based upon the subjective intentions of the police officers involved. See *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996). Terry does not disagree with this statement of the law, but notes that the subjective beliefs of Swan and Daniels "go a long way in informing this Court as to what conclusions 'reasonable and prudent men, not legal technicians' drew about the immediately apparent link" between the money and the credit union robbery. This court agrees. The money was not bound by wrappers identifying the credit union and was not readily identifiable as coming from the credit union that had been robbed. Based upon the evidence presented at the suppression hearing, this court cannot find that the officers had probable cause to believe the cash was linked to criminal activity. Accordingly, the seizure of the currency was not proper based upon the plain view doctrine.

## II. INDEPENDENT SOURCE DOCTRINE

The Government also argues, however, that the money should not be excluded based upon the independent source doctrine. The Government argues there was

an independent source for the seizure of the money—the federal search warrant issued on September 17, 1998. This is a close question based upon the facts of this case, but this court agrees.

As previously noted, a warrant for Terry's arrest was issued on September 16, 1998. The affidavit in support of this warrant was prepared by a special agent with the Federal Bureau of Investigation (FBI), David A. Young. Young's affidavit listed information regarding the robbery of the credit union on September 14, 1998, a description of the robbers, the fact that an anonymous caller to Crimestoppers identified Terry and his girlfriend as the robbers and another anonymous tipster reported that the robbery was committed by May and her boyfriend. According to the affidavit, a detective then obtained records showing Terry's address and learned that May sometimes resided with him. The detective went to Terry's residence and observed a newly purchased 1995 GMC van parked in the yard. A sticker on the van identified the dealership where the van was purchased. The detective went to the dealership and learned that Terry had placed a $100 deposit on the van on September 3, 1998. On September 14, between 5 and 6 p.m., Terry returned to the dealership with a woman he identified as "Kellie." Terry agreed to purchase the van for approximately $10,800 and paid $4,000 down. He took possession of the van and agreed to pay the balance on September 15, 1998. The $4,000 down payment was recovered from the bank where it had been deposited by the dealership. From this cash deposit, the detective and FBI agent Young recovered 14 of the bait bills from the credit union robbery. Young's affidavit concluded with a recitation of Terry's criminal history, including previous convictions of armed robbery.

As noted previously, police officers entered Terry's residence at about 9:25 p.m. on September 16, 1998. Terry was then arrested pursuant to the arrest warrant and his residence was searched as authorized by the search warrant. After the search was completed, FBI agent Young completed an affidavit for a federal search warrant. The affidavit was prepared at approximately 1:45 a.m. on September 17, 1998. In this affidavit, Young stated that he was seeking search warrants for Terry's house, a black and white metal shed on the property and "$1,186 in United States currency already seized." In support of this request, Young listed items found during the search of Terry's residence, including the currency. He also discussed an interview between FBI agents and May on September 16, 1998. May lied about not being present when the van was purchased and stated that she was at the residence at the time of the robbery, a fact contradicted by witnesses who were inside the residence at the time of the robbery. In addition, Young discussed an interview on September 16, 1998, with Kenneth Faust, Terry's nephew. Faust told investigators: Terry and May were broke prior to September 14, 1998, and had discussed committing an armed robbery; he saw Terry in possession of a hat that met the description of the hat worn by the credit union robber; he had seen Terry in possession of a fully loaded .357 magnum handgun during the preceding three days; Terry and May left their residence around noon on September 14, 1998, and returned around 3:30 p.m.; when they returned, they pulled their car to the back of the residence, in close proximity to the shed; they entered the residence through the rear, went into the bedroom and locked the door; and when they came out of the bedroom, Faust saw that Terry was carrying a large sum of money. Faust also told the investigators that Terry often spent time in the shed, went into the shed at night and forbid anyone else from going into the shed. Investigators who looked through the open door of the shed saw cloth which might be clothing. The gun used in the robbery, the hat worn by the robber and paint-stained pants worn by

the robber were not found during the search of the residence. Young concluded:

> Investigators believe that it is reasonable to assume that Lee Terry and Kellie Jo May hid inside the shed on the property at 511 Alabama Street items related to, used in or taken during the credit union robbery.

Young also stated that a copy of his affidavit in support of the arrest warrant was attached and incorporated into the affidavit for a search warrant.

Based upon this affidavit, a federal search warrant was issued at 2:28 a.m. on September 17, 1998. The warrant authorized the search of Terry's residence, the metal shed located on the property and the $1,186 in United States Currency previously seized for:

> [f]irearms, dark color hooded sweat shirts, United States Currency with serial numbers that match bait bills taken in the Champaign County Schools Credit Union robbery on September 14, 1998, white gilligan type hat and a backpack, United States Currency which may have been taken in the robbery and white gloves and white and black Converse Shoes.

After the search warrant was issued, the serial numbers on the $1,186 were checked to see if they matched money taken in the robbery of the credit union.

■ The exclusionary rule prohibits the introduction of evidence obtained as the direct or indirect result of an illegal search. *United States v. Markling*, 7 F.3d 1309, 1315 (7th Cir.1993) (citing *Murray v. United States*, 487 U.S. 533, 536, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988)). However, the independent source doctrine allows the admission of evidence that has been discovered by means wholly independent of any constitutional violation. *United States v. Gravens*, 129 F.3d 974, 981 (7th Cir. 1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1333, 140 L.Ed.2d 494 (1998) (quoting *Nix v. Williams*, 467 U.S. 431, 443, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)). The Supreme Court has determined that " 'the

interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position than they would have been in if no police error or misconduct had occurred.' " *Murray*, 487 U.S. at 537, 108 S.Ct. 2529 (quoting *Nix*, 467 U.S. at 443, 104 S.Ct. 2501). "When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation." *Nix*, 467 U.S. at 443, 104 S.Ct. 2501.

■ The Supreme Court in *Murray* indicated that the "reseizure of tangible evidence already seized" is not impossible. *Murray*, 487 U.S. at 542, 108 S.Ct. 2529. The Court further stated:

> while the government should not profit from its illegal activity, neither should it be placed in a worse position than it would otherwise have occupied. So long as a later, lawful seizure is genuinely independent of an earlier, tainted one (which may well be difficult to establish where the seized goods are kept in the police's possession) there is no reason why the independent source doctrine should not apply. *Murray*, 487 U.S. at 542, 108 S.Ct. 2529.

The Court determined that the ultimate question is "whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence." *Murray*, 487 U.S. at 542, 108 S.Ct. 2529. Accordingly, in order to ensure that a subsequent warrant is valid, the Supreme Court has required that the government show two things: (1) that the illegally obtained evidence did not prompt the police officer to seek the warrant; and (2) that the illegally obtained evidence did not affect the magistrate's decision to issue the warrant. *United States v. Liss*, 103 F.3d 617, 622 (7th Cir. 1997) (citing *Murray*, 487 U.S. at 542, 108 S.Ct. 2529). If the application for the

warrant established probable cause for the search apart from the illegally obtained information, then the warrant is lawful and the independent source doctrine applies, provided that the officers were not prompted to obtain the warrant by what they improperly seized. See *Markling,* 7 F.3d at 1317 (citing *United States v. Restrepo,* 966 F.2d 964, 970 (5th Cir.1992), *cert. denied* in *Pulido v. United States,* 506 U.S. 1049, 113 S.Ct. 968, 122 L.Ed.2d 124 (1993)).

This court recognizes that the Government has a heavy burden here because this is a case where the "seized goods [were] kept in the police's possession." See *Murray,* 487 U.S. at 542, 108 S.Ct. 2529. Moreover, this court recognizes that this kind of case "can be incredibly difficult to resolve." Wayne R. LaFave, *Search & Seizure, a Treatise on the Fourth Amendment* § 11.4(f) at 294 (3d ed.1996). However, this court also notes that its focus should be on the deterrence objective of the exclusionary rule. See LaFave at 294–95. "Any rational assessment or application of the fruit of the poisonous tree doctrine must take the objective of deterrence into account." LaFave at 307; see also *Markling,* 7 F.3d at 1315 (exclusionary rule is a sanction, and sanctions are supposed to be proportioned to the wrongdoing they punish). In this case, police officers were properly in Terry's residence on September 16, 1998, as they had a search warrant and a federal warrant for Terry's arrest. They properly searched the closet in a bedroom of the residence and found the $1,186. It is true that the money should not have been seized because it was not listed as an item subject to seizure in the search warrant. However, subsequently, a federal search warrant was obtained and it was only then that the $1,186 was subjected to further scrutiny to determine if it was connected to the robbery of the credit union. This court does not view the police conduct in this case as the sort the law needs to deter.

With these principles in mind, this court now turns to the two-part test set out in *Murray.* This court first finds that the information in Young's affidavits, without considering the prior seizure of the $1,186, was enough to establish probable cause to search the residence and the metal shed. Terry contends that the information provided by Faust should not be considered in making this determination because Faust had no history of providing reliable information. However, much of the information provided by Faust was consistent with other information recited by Young and was, therefore, corroborated. This court specifically concludes that, even without information regarding the challenged evidence, the $1,186, there was enough reliable information in the affidavit to establish " 'a fair probability that contraband or evidence of a crime' " would be found in Terry's residence and the metal shed on the property. See *United States v. Clemens,* 58 F.3d 318, 320 (7th Cir.1995) (quoting *Markling,* 7 F.3d at 1317).

The remaining question is whether the Government established that the illegally seized evidence, the $1,186, was not what prompted the police officers to obtain the federal search warrant. In both *Murray* and *Markling,* the cause was remanded for a determination on this question. *Murray,* 487 U.S. at 543–44, 108 S.Ct. 2529; *Markling,* 7 F.3d at 1317. Terry argues that the agents' decision to seek the warrant *was* prompted by the illegal seizure of the money. Terry relies on the testimony of Daniels and Swan. Daniels stated that "we were going to seek a federal warrant for the money and also for other items at the house." Swan also talked about the money and then stated that "the search warrant was actually executed later to secure some of those items so they could be looked at a little bit deeper." Terry argues that, without the illegal seizure of the money, agents would not have decided to ask for a warrant to search the money that had already been seized.

Although Daniels and Swan did not testify as to whether they would have sought

the federal search warrant absent the seizure of the $1,186, the evidence shows that the investigating officers would have sought a federal search warrant even if the money had not been seized. The police officers conducting the investigation had ample information to show that an additional search of Terry's residence and a search of the metal shed on the property was warranted. This court specifically finds that the officers investigating the credit union robbery would have sought the federal search warrant even if the currency had not been seized. See *Liss*, 103 F.3d at 619–20. The federal search warrant authorized a search of Terry's residence and the metal shed for evidence related to the credit union robbery, including "United States Currency which may have been taken in the robbery." The $1,186 would have been recovered in executing the federal search warrant. Accordingly, the federal search warrant supplied an independent source for the seizure of the money.

This court finds that the $1,186 was "rediscovered" in a legal search supported by a valid search warrant, and the evidence need not be suppressed. See *Clemens*, 58 F.3d at 320–21. As a result, Terry's Supplemental Motion to Suppress (# 20) is DENIED.