**Ramon MORETA–RAMIREZ,
et. al.   Plaintiffs**

**v.**

**Bonnie LEMERT, et. al.   Defendants**

**No.  CIV.00–1103(SEC).**

United States District Court,
D. Puerto Rico.

Nov. 26, 2002.

Luis R. Rivera–Rodriguez, Hato Rey, PR, for plaintiffs.

Lisa E. Bhatia–Gautier, Fidel A. Sevilla-no–Del–Rio, U.S. Attorney's Office, Hato Rey, PR, Arlene De–La–Matta–Melendez, Santurce, PR, Jaime Marcial–Falcon, San Juan, PR, for defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court are Defendants Bonnie Lemert, Richard Roark, Rodolfo Salcedo, Luis Ortiz, and Ismael Rodríguez's motions for summary judgment (Docket##46, 50, 51 and 52). The Court granted Plaintiffs until October 26, 2002 to file their opposition to the motions, and conduct any necessary discovery regarding the issue of qualified immunity. Almost a month has come and gone since said deadline, and Plaintiffs have failed to file their opposition or request an extension of time to do so. Therefore, the Court has considered the motions as unopposed. For the reasons stated below, both motions are GRANTED. Plaintiffs' claims shall be dismissed consistent with this opinion.

## Factual Background

Plaintiffs, Ramón Moreta–Ramírez and Leopoldo Moreta–Ramírez, (hereinafter "Plaintiffs"), filed a civil rights complaint on January 25, 2000, against Ismael Rodríguez, Richard Roark, and Rodolfo Salcedo, all acting investigators of the U.S. Customs Service; Luis Ortiz, an acting Task Force Agent of the U.S. Customs Service; and Bonnie Lemert, the Area Port Director of the U.S. Customs Service and commanding officer of the other defendants (Docket # 1 ¶¶ 4–10). In their complaint Plaintiffs allege that they were wrongfully and unlawfully arrested and prosecuted by the above-mentioned defendants, who negligently or intentionally:

1. Concealed the fact that the address in a cardboard box sent from Cali, Colombia to San Juan, Puerto Rico, via Airborne Express, was not addressed to an existing and verified address (Docket # 1 ¶¶ 15–8). The box in question contained seven religious candles made of a wax which reacted positive to the presence of cocaine (*Id.* ¶ 12).

2. The fact that the address in the cardboard box did not exist was allegedly omitted from Defendants' statements and testimony, including their official reports of the investigation (*Id.* ¶¶ 18–9).

3. Plaintiffs further alleged that Defendants Ismael Rodríguez, Richard Roark, Rodolfo Salcedo, and Luis Ortiz advised, assisted, and ratified to a Federal Magistrate–Judge that the box was connected to Plaintiff's Ramon Moreta's residence, for purposes of a search warrant (*Id.* at ¶¶ 20–2).

4. In addition, Plaintiffs alleged that Defendant Ismael Rodríguez "testi-

fied falsely before a grand jury," (*Id.* at ¶ 23), and that he "concealed and lied about a number of details of the controlled delivery of the box, including, but not limited to: (a) that the airway bill depicted an incorrect address; and (b) that the plaintiffs' waived their Miranda rights and gave exculpatory statements." (*Id.* at ¶ 24).

5. As a result of those acts, Plaintiffs allege that they were arrested without probable cause to believe they had committed a crime, and were held in custody continuously until July 17, 1999. (*Id.* at ¶¶ 27–8). The charges against Plaintiffs were eventually dismissed, on June 17, 1999 (*Id.* at ¶ 29).

Defendants have moved for summary judgment mainly on the grounds that: (1) the doctrine of qualified immunity applies to these defendants; and (2) under a totality of the circumstances standard, the Magistrate–Judge's finding of probable cause prevails. This Court had already addressed these arguments in the context of a motion to dismiss. At that time, however, we were bound by a standard of review which required us to give full credence to the Plaintiffs' allegations. The situation is now different, particularly when Plaintiffs' have failed to oppose Defendants' motions for summary judgment.

**Standard of Review**

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim ... is asserted ... may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any materi-

al fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); *NASCO, Inc. v. Public Storage, Inc.*, 29 F.3d 28 (1st Cir.1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2725, p. 401.

In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the nonmoving party. *U.S. v. One Parcel of Real Property*, 960 F.2d 200, 204 (1st Cir.1992); *see also Boston Athletic Assn. v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989); *Medina Muñoz v. R.J. Reynolds Tobacco*, 896 F.2d 5, 8 (1st Cir.1990) ("[a] 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most favorable to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.") (citations omitted).

By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Government Development Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994). "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Wright, Miller & Kane, *supra*, § 2725 at p. 419. "Not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Martínez v. Colón*, 54 F.3d 980, 983–984 (1st Cir. 1995).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence. *Casas Office Machines, Inc. v. Mita Copystar America, Inc.*, 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, not room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (*citing Greenburg v. Puerto Rico Maritime Shipping Authority*, 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machines*, 42 F.3d at 684.

While the moving party has the burden of initially establishing that there is "an absence of evidence to support the non-moving party's case", *Maldonado–Denis v. Castillo–Rodríguez*, 23 F.3d 576, 581 (1st Cir.1994); the nonmovant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclusions." *Lawton v. State Mutual Life Assurance Company of America*, 101 F.3d 218, 223 (1st Cir.1996). Furthermore, "the nonmovant must produce specific facts, in suitable evidentiary form' sufficient to limn a trialworthy issue .... Failure to do so allows the summary judgment engine to operate at full throttle." *Id.; see also Kelly v. United States*, 924 F.2d 355, 358 (1st Cir.1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medina–Muñoz*, 896 F.2d at 8, (*quoting Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.")

Local Rule 311(12), moreover, requires the moving party to "file annexed to the motion a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried ...." Unless the non-moving party controverts this statement, all the material facts set forth therein "shall be deemed to be admitted." *Id.* This is the so-called "anti-ferret rule." *See, e.g., Orbi, S.A. v. Calvesbert & Brown*, 20 F.Supp.2d 289, 291 (D.P.R.1998). While failure to comply with this rule does not automatically warrant the granting of summary judgment, "it launches the non-movant's case down the road toward an early dismissal." *Tavárez v. Champion Products, Inc.*, 903 F.Supp. 268, 270 (D.P.R.1995). In the present case, Plaintiffs failed to comply with Local Rule 311(12). Therefore, the facts, as set forth in Defendants' statement of material facts and memoranda in support of their motions, are deemed admitted for the purposes of this motion.

**Applicable Law and Analysis**

■ Civil claims based on unreasonable searches and seizures are controlled by the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court recognized that the violation of the Fourth Amendment by federal agents is redressible through an action for money damages against the federal agents. Plaintiffs' complaint claims compensatory and punitive damages against federal agents "in their personal and individual capacities" for the violation of their "rights to be free from a prosecution without probable cause," under the Fourth Amendment to the U.S. Constitution and the *Bivens* case (Docket # 1 ¶ 1).

Defendants, on the other hand, invoke the doctrine of qualified immunity in support of their motions for summary judgment. The defense of qualified immunity is available to federal officials acting in the scope of their employment. It protects them from liability arising from discretionary action within the scope of their employment, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Interpreting *Harlow*, the First Circuit has established a three-part inquiry to determine whether or not the doctrine of qualified immunity applies in a given situation.

First, the district court "must determine whether the plaintiff has alleged the deprivation of an actual constitutional right," *Abreu–Guzmán v. Ford*, 241 F.3d 69, 73 (1st Cir.2001) *quoting Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999), then "the court must proceed to determine whether that right was clearly established at the time of the alleged violation." *Id.* If these two questions are answered in the affirmative, the court then proceeds to determine "whether an objectively reasonable officer, performing discretionary functions, would have understood his or her conduct violated that clearly established constitutional right." *Id. citing Harlow*, 457 U.S. at 818–19, 102 S.Ct. 2727.

■ In this case, the answer to the first two inquiries is in the affirmative. Since *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court has recognized that the use of false statements to obtain a warrant violates the Fourth Amendment. Plaintiff has alleged the violation of the Fourth Amendment right to have a warrant issued only upon probable cause. This is a recognized constitutional right clearly established at the time of the alleged violation.

■ Nonetheless, to survive the third prong of the test, Defendants must establish that they could not have reasonably believed that their conduct was lawful in light of clearly established Fourth Amendment law. Where, as here, a plaintiff challenges the sufficiency of a search warrant, the Supreme Court has held that the protection of qualified immunity will be lost only "where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley v. Briggs*, 475 U.S. 335, 344–45, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). *See also Forman v. Richmond*, 104 F.3d 950, 964 (7th Cir.1997). The crucial issue "is whether a reasonably well trained officer in the defendant's position would have known that the affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley*, 475 U.S. at 345, 106 S.Ct. 1092. "[I]f officers of reasonable competence could disagree on this issue, immunity should be recognized." *Id.* at 341, 106 S.Ct. 1092; *Hart v. O'Brien*, 127 F.3d 424, 444 (5th Cir.1997) (stating that there must not even "arguably" be probable cause for the search for immunity to be lost). In other words, where a reasonable law enforcement officer, confronted with the same circumstances, could have believed that the defendant's actions, even if mistaken, were reasonable, the law is not so clearly established as to strip the defendant of his or her qualified immunity. *See Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523(1987); *Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (stating that even law enforcement officials who reasonably, but mistakenly, conclude that probable cause is present are entitled to immunity).

■ In order to analyze whether Defendants could have reasonably believed that the search was conducted legally, we must ask ourselves whether it was reasonable to think that the warrant was issued pursuant to a valid finding of probable cause. The Supreme Court has adopted a highly flexible "totality of the circumstances" analysis to determine whether probable cause exists to support the issuance of a search warrant. *See Illinois v. Gates*, 462 U.S. 213, 230–31, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). At the core of this analysis is the rejection of "rigid rules" in favor of a "common sense" perspective that is "practical [and] nontechnical." *Id.* at 230–236, 103 S.Ct. 2317. Under this approach, probable cause is assessed based upon all available information lawfully obtained without regard to evidentiary or procedural technicalities. *Id.* at 235–236, 103 S.Ct. 2317. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 236, 103 S.Ct. 2317 (citations omitted). A magistrate's finding of probable cause is entitled to "great deference." *Id.* at 236, 103 S.Ct. 2317; *see Forman*, 104 F.3d at 963 (recognizing that the plaintiff bears the high burden of demonstrating that the court "should not attribute 'great deference' to the magistrate's decision that a warrant should issue"). If a search warrant is challenged on appeal or in a collateral proceeding, a reviewing court should not conduct a de novo review to determine whether probable cause existed. "[T]he duty of the reviewing court is simply to ensure that the magistrate had a 'substantial basis' for ... conclud[ing] that probable cause existed." *Gates*, 462 U.S. at 238–239, 103 S.Ct. 2317 (citation omitted)

This highly deferential standard of review requires that the court resolve "doubtful or marginal cases" in favor of the magistrate's finding of probable cause. *Id.* at 237 n. 10, 103 S.Ct. 2317. It also mandates that the court afford warrants substantial respect and not subject them to microscopic examination and second-guessing. As the Supreme Court emphasized, "a grudging or negative attitude by reviewing courts toward warrants, is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than common sense manner." *Id.* at 236, 103 S.Ct. 2317 (citations omitted).

■ This analysis is not altered by the mere fact that a search warrant was issued based upon false information provided by a law enforcement officer or omitted facts. To invalidate a warrant issued by a magistrate based upon false information or omitted facts, courts apply the legal standard established in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). *See Forman*, 104 F.3d at 963–64; *Perlman v. City of Chicago*, 801 F.2d 262, 264–65 (7th Cir.1986). In *Franks*, the Supreme Court identified two fundamental requirements that the party seeking to invalidate the warrant must satisfy. First, he or she must prove that the law enforcement officer who sought the warrant **deliberately lied to the magistrate or acted with reckless disregard for the truth**. *Franks*, 438 U.S. at 171, 98 S.Ct. 2674. To establish reckless disregard for the truth, the plaintiff must show that the law enforcement officer "in fact entertained serious doubts as to the truth of [the] allegations." *United States v. Williams*, 737 F.2d 594, 602 (7th Cir.1984).

■ Allegations of "negligence or innocent mistake" resulting in the submission

of false information to a magistrate by a law enforcement officer are insufficient to invalidate a search warrant. *Franks,* 438 U.S. at 171, 98 S.Ct. 2674. This rule precludes challenges to warrants based merely upon the claim that law enforcement officers failed to disclose all potentially exculpatory information or failed to conduct the most exhaustive investigation possible. *See United States v. Dale,* 991 F.2d 819, 844 (D.C.Cir.); *Torchinsky v. Siwinski,* 942 F.2d 257, 264 (4th Cir.1991); *Bernstein v. United States,* 990 F.Supp. 428, 438 (D.S.C.1997). *See also, United States v. Streeter,* 907 F.2d 781, 787 (8th Cir.1990), *overruled on other grounds* by *United States v. Wise,* 976 F.2d 393, 401 (8th Cir.1992) (finding no *Franks* violation where the officer failed to properly verify essential information or otherwise conducted an inadequate investigation prior to seeking a warrant).

The second fundamental requirement identified in *Franks* is that the party challenging the search warrant must prove that deliberately or recklessly false information in the affidavit was essential or indispensable to the magistrate's finding of probable cause such that when it is excised from the affidavit there is not a substantial basis remaining to support the magistrate's finding. *Franks,* 438 U.S. at 171–172, 98 S.Ct. 2674. Where there remains a substantial basis for the magistrate's finding in the affidavit, any challenge to the warrant must fail. In other words, even if a plaintiff was able to prove that the officer who sought the warrant deliberately lied to the magistrate or acted with reckless disregard for the truth, the false information "do[es] not invalidate a warrant if the truthful statements establish probable cause." *United States v. Ferra,* 948 F.2d 352, 353 (7th Cir.1991).

In the case before us, the allegedly false statements contained in the affidavit would not necessarily invalidate the search warrant. First, Plaintiffs allege that the affidavit contained false statements that were made knowingly and intentionally or with reckless disregard for the truth. Plaintiffs further state that the affidavit omitted relevant and material facts. Plaintiffs conclude that as a result of the false information and omitted facts, the search of Plaintiffs' residence was executed without probable cause in violation of the Fourth Amendment.

▉ Nonetheless, applying the rules discussed above to the present case, and under the totality of the circumstances, we find that Defendants have satisfied what in this situation is their burden to prove that it was reasonable for them to believe that the search of Plaintiffs' residence was conducted pursuant to a valid search warrant. The Court finds that it must conclude from the record that the affidavit did not contain grossly misleading, and/or intentionally false information. The information which Plaintiffs contend was omitted from the warrant was the incorrectly spelled address that was on the package. However, both the correct address and the incorrect address were provided to the magistrate on the affidavit. This strongly suggests that the information provided by Defendant Ismael Rodríguez in the affidavit was made in good-faith and with no intentions to deceive the magistrate. He seems to have inadvertently misstated the address to which the package was addressed in a section of his affidavit, and/or in the warrant. This misstatement, however, was not **an essential part** of the affidavit, and in any case, was not a gross and reckless misstatement of the facts. Even assuming *arguendo* that Defendant Rodríguez rendered an affidavit with insufficient information, Defendants have demonstrated that there was no recklessness in making such a mistake. Especially when the requisite recklessness is only

to be inferred "when omitted information was clearly critical to assessing the legality of the search." *U.S. v. Vigeant*, 176 F.3d 565, 573 (1st Cir.1999) (citations omitted).

The actual address of Plaintiffs is "Calle 38 AY–1 Urb. Valle Arriba Heights, Carolina, Puerto Rico." The address on the package containing the heroin was "Calle 38 AY–1 Urb. Vallarina Hay, Puerto Rico." The package was sent to Plaintiff Ramon Moreta. The first part of the address Calle 38 AY–1 matches identically. The urbanizations, although not matching, are very similar. In fact, the difference between the two can be easily explained as a misspelling based on a phonetic interpretation of the correct spelling. Finally, the package was accepted at the address by Plaintiff Leopoldo Moreta. All of these facts could lead a reasonable law enforcement officer to believe that the package containing the heroin was intended for Plaintiffs and their residence.

Furthermore, the agents' surveillance of the outside of the premises of the residence to be searched prior to seeking the warrant supplied the independent corroboration of the correct address. Even if we excise all alleged misleading statements from the affidavit, it is still reasonable to think that there was an adequate showing of probable cause for the search warrant to have been issued. Thus, any misstatements are immaterial. The package was addressed to Plaintiff Ramón Moreta, at an address which was, with only slight differences, the one that was searched, and the package was indeed accepted for delivery at the address for which the warrant was issued. The search warrant was not issued for an incorrect address. And the fact that the address to be searched was actually Plaintiffs' address was independently corroborated through surveillance. Under these circumstances, the Court finds that it was reasonable for Defendants

to believe that the search they were conducting was legal. Therefore, they are all entitled to qualified immunity.

### Conclusion

After a review of Defendants' unopposed motions, Defendants' motions for summary judgment are **GRANTED** and the case shall be **DISMISSED WITH PREJUDICE.**

**SO ORDERED.**