**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**James William BRUCE and Murray A. Woodworth, a/k/a Thomas Earl Hardin, a/k/a John C. Wilson, Defendants–Appellants.**

**Nos. 96–1652, 96–1701.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 30, 1996.

Decided March 11, 1997.

---

Sharon Jackson (argued), Office of the United States Attorney, Indianapolis, IN, for U.S.

John P. Brinson, Mark Foster (argued), John D. Clouse, Clouse Law Offices, Evansville, IN, for James W. Bruce.

Mark A. Foster (argued), Evansville, IN, for Murray A. Woodworth.

Before WOOD, Jr., RIPPLE and MANION, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Defendant–Appellant Murray A. Woodworth and Defendant–Appellant James William Bruce (Defendants) met while the two were serving time in the federal penitentiary at Leavenworth, Kansas for armed bank robbery. When Woodworth was paroled, he was transferred to a prison in his native Canada, where he was to serve a life sentence for being a habitual criminal. Bruce also finished his sentence and was released. In late 1993, Woodworth escaped from the Canadian prison and met up with Bruce again in Michigan. It was at this point that they began making and carrying out their plans to rob banks in Evansville, Indiana. They first paid a visit to Bruce's nephew in Tennessee and had him purchase an assault rifle on their behalf. A few days later they traveled to Evansville and on October 29, 1993, they robbed the first of four banks there.

Each robbery followed a similar pattern, with slight variations. The day before each robbery, Woodworth would purchase an older vehicle, to which they would affix a stolen license plate. This served as their getaway car. For the October 29 robbery, the car of choice was a 1978 black Lincoln Continental. That day, they entered a branch of the Old National Bank at about 2:40 p.m. disguised in Halloween masks and armed with an assault rifle, and made off with $91,500. They then returned to the Lincoln, which they drove a short distance and then abandoned for another car.

In 1994, Defendants again came to Evansville, and this time Woodworth purchased a 1977 Dodge van. On September 2, 1994, at about 3:00 p.m., armed with a shotgun, they approached two Mid–West Federal Savings employees who were filling an ATM machine and robbed them of $13,050. Again, they drove a short distance away before leaving the van for other transportation.

For the last two robberies, Defendants resumed the style of their first Evansville robbery. On October 27, 1994, at 2:45 p.m., Bruce and Woodworth drove up to a different branch of the Old National Bank, again in an older car with stolen license plates, and walked inside armed with an assault rifle. They made off with $62,456 and drove away before again switching cars. Finally, on February 9, 1995, also at 2:45 p.m., they entered yet another branch of the Old National Bank with the assault rifle, and demanded more money. They left the bank with $54,963.

Their good fortune in not getting caught was swiftly coming to a close, however. After the February 9 robbery, Defendants left their getaway car and drove off in Bruce's station wagon. Someone spotted them getting into the wagon, and shortly thereafter the Evansville police received notice that two men were at Tire America with a similar station wagon. Apparently Bruce and Woodworth were in no great hurry to leave town, or perhaps Bruce's car was more decrepit than they had anticipated. They were trying to purchase new tires and get an oil leak repaired. When that oil leak proved too difficult to fix, they went car shopping one more time, and found a pick-up truck for sale near a shopping mall. They purchased it directly from the owner, who, unfortunately for Defendants, was an off-duty Kentucky police officer. He found the nature of the sale somewhat odd, however, so he called his office. They informed him of the bank robbery earlier that day in Evansville, and the officer then phoned the Evansville police to give them a description of the two men and the pick-up.

Less than an hour later, Evansville police found Defendants closing the door to a rental storage unit and arrested them. When they searched the pick-up, police found two loaded handguns, a bag with the disguises Defendants had worn during the robbery that day, two assault rifles, ammunition, and nearly all the money that the men had stolen earlier in the day. A search warrant was issued for the motel room in Henderson, Kentucky where Defendants had been staying, and there police discovered, among other things, police scanners and a great deal of ammunition, including six 12–gauge shotgun shells.

A federal grand jury returned an eleven-count indictment against Defendants, charg-

ing them with one count of conspiracy to commit armed bank robbery, four counts of armed bank robbery, and four counts of use of a weapon in a crime of violence. Each was also individually charged with one count of being a felon in possession of a firearm. The Defendants moved for, and were granted, a severance of counts 8 and 9, which involved the last of the four armed bank robberies.

During closing arguments of the trial on counts 8 and 9, the Defendants objected to the district court's refusal to let defense counsel define the term "reasonable doubt." They also objected to two jury instructions, one on the use of co-conspirator statements, and one on the jury's duty to follow the law. These objections were overruled, and the jury returned a guilty verdict against both Defendants on both counts.

Facing a trial on all of the remaining counts, Bruce and Woodworth moved for a severance of counts so that each bank robbery charge would be tried separately. This motion was granted in part, as the district court severed counts 10 and 11, the felon-in-possession counts, but the judge ordered trial on counts 1 through 7, which comprised the three earlier armed bank robberies and the conspiracy count. The Defendants then moved to dismiss counts 1 through 7, 10 and 11, alleging an Eighth Amendment violation. They claimed that the mandatory sentence on counts 8 and 9 required prison terms so long that Bruce would be 87 years old and Woodworth would be 106 when released. The government's decision to try them again on the remaining counts, they stated, would more than double their sentences, and because they could not expect to live that long, the additional punishment would be unnecessary and, as a result, would violate the Eighth Amendment. The district court denied this motion, because the Defendants had not yet been sentenced, and the trial on counts 1 through 7 began. During this second trial, Defendants also objected to the use of certain evidence: namely, the shotgun shells found in the search of Defendants' motel room, which were not specifically named in the search warrant. The trial judge overruled their objection and admitted the evidence under the plain view doctrine.

At the close of the second trial, the jury returned guilty verdicts against each Defendant on all counts.

The district court then sentenced Bruce and Woodworth on the nine counts for which they were convicted to 75 years and one month in prison each; 65 years of that sentence was mandatory under the Sentencing Guidelines. The maximum sentence each could have received was 170 years. They were also sentenced to 5 years of supervised release, and were ordered to pay restitution of $169,854 and special assessments of $450.

Bruce and Woodworth have appealed the district court's refusal to sever the counts for each armed bank robbery, the court's denial of their objections to two jury instructions in the first trial, the court's refusal to suppress evidence against them, the court's refusal to let their attorney define "reasonable doubt" for the jury, and the court's denial of their motion to dismiss counts 1 through 7, 10 and 11. For the following reasons, we affirm the district court on all points.

I.

■ Defendants claim that the district court, because it granted their earlier motion to sever counts 8 and 9 (the fourth bank robbery), was estopped from denying their motion to sever the remaining counts and should have agreed to try each bank robbery charge individually, instead of merely severing the felon-in-possession counts (Counts 10 and 11) and proceeding to trial on counts 1 through 7. The district court severed counts 8 and 9 from counts 10 and 11 to reduce the risk that the jury would use evidence about their criminal histories, which would have been admissible for counts 10 and 11, as propensity evidence. Defendants argue that the court's reasons were different, that it severed counts 8 and 9 in order to try each armed robbery count separately. They claim the court should have applied that same reasoning to their second motion to sever. We review the district court's decision to deny Defendants' second motion to sever counts 1 through 7 for abuse of discretion, *United States v. Turner*, 93 F.3d 276, 283 (7th Cir. 1996); *United States v. Pulido*, 69 F.3d 192, 207 (7th Cir.1995); *United States v. Cole-*

*man,* 22 F.3d 126, 134 (7th Cir.1994). To prevail, Defendants must establish that they suffered "actual prejudice" from the denial of their motion. *Pulido,* 69 F.3d at 207. This requires a showing that they were "unable to obtain a fair trial, not merely that a separate trial would have offered [them] a better chance for acquittal." *Id.* (quoting *United States v. Stillo,* 57 F.3d 553, 557 (7th Cir. 1995)).

Defendants do not offer any specific instances of unfairness in their trial resulting from the denial of their motion. Rather, they rely primarily on a collateral estoppel theory to support their contentions. They are mistaken in their reliance, as collateral estoppel applies only to "an issue of ultimate fact [that] has been determined by a valid and final judgment" between identical parties. *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). The district court never ruled on the issue of severing counts 8 through 11 from counts 1 through 7, because the government agreed to the severance. The court, in its discretion, did rule that counts 8 and 9 should be severed from counts 10 and 11, to reduce the risk that character evidence would be used against the Defendants, but this risk was only present with counts 10 and 11. It is clear that the issues the district court was concerned with in making that decision, such as the risk of prejudice to the Defendants, were not present when the court denied Defendants' second motion to sever. In addition, none of these issues were issues of ultimate fact. Furthermore, the district court's decision to sever counts 8 and 9 from counts 10 and 11 cannot be considered a "valid and final judgment." *Id.* Thus, collateral estoppel did not bind the district court and keep it from denying Defendants' second motion for severance.

Joint trials are favored and encouraged in our judicial system, and "a single trial is appropriate if 'it is within the jury's capacity, given the complexity of the case, to follow admonitory instructions and to keep separate, collate and appraise the [relevant] evidence.'" *Pulido,* 69 F.3d at 208 (quoting *United States v. Moya–Gomez,* 860 F.2d 706, 768 (7th Cir.1988)). The district court in-structed the jury to consider each count separately, an instruction that has been found to be "an adequate safeguard against the risk of prejudice in the form of jury confusion, evidentiary spillover and cumulation of evidence." *Pulido,* 69 F.3d at 208 (quoting *United States v. Berardi,* 675 F.2d 894, 901 (7th Cir.1982)). As noted above, Defendants have not shown that the district court's denial of their second motion to sever caused them to suffer actual prejudice, and so we conclude that the district court did not abuse its discretion. Its decision to deny Defendants' motion must be affirmed.

## II.

Next, Defendants challenge the district court's use of two jury instructions in the first trial. On review, we will not overturn the use of a jury instruction if it fairly and adequately advises the jury of the law in this Circuit. *United States v. Akinrinade,* 61 F.3d 1279, 1288 (7th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 541, 133 L.Ed.2d 444 (1995).

Defendants' first objection relates to the instruction informing the jury of its duty to follow the law. The district court read to the jury the Seventh Circuit Pattern Instruction No. 1.01, which states, in relevant part, "You must not question any rule of law stated by me in these instructions. Regardless of any opinion you may have as to what the law ought to be, you must base your verdict on the law given by me." Defendants claim that this instruction prevents jury nullification; they argue that a jury should not be ordered to follow the law because it has the power to nullify the law. This argument has no merit. Jury nullification is "not to be positively sanctioned by instructions," but is to be viewed as an "aberration under our system." *United States v. Anderson,* 716 F.2d 446, 450 (7th Cir.1983); *see also United States v. Kerley,* 838 F.2d 932, 938 (7th Cir. 1988); *United States v. Brown,* 548 F.2d 204, 210 (7th Cir.1977). The reading of Instruction No. 1.01 was proper.

Defendants' second objection involves the wording of another instruction used in the first trial, regarding coconspirator state-

ments. They objected to the use of the word "conspiracy," arguing that it was prejudicial because it might suggest that the Defendants were guilty of conspiracy, even though a conspiracy count was not before the court at the time. Defendants also object to the wording of a sentence in the same instruction: "During the trial you heard about statements made by one of the defendants...." They claim that this directly attributed the statements, which were made to the persons being robbed, to the Defendants, telling the jury that the Defendants were the men who robbed the bank. The result, Defendants reason, is that the government was relieved of its burden of proving guilt beyond a reasonable doubt.

District courts are given great latitude in choosing the wording of jury instructions, *United States v. Goines*, 988 F.2d 750, 772 (7th Cir.1993). This Circuit approved a similar co-conspirator statement instruction in *United States v. Martinez de Ortiz*, 907 F.2d 629, 635 (7th Cir.1990) (en banc). In this instance, "conspiracy" was used as an evidentiary, not a substantive, term. *See United States v. Kendall*, 665 F.2d 126, 130 (7th Cir.1981). In addition, the word "defendant" in this instruction was used merely to identify the Defendants, and not as an indication by the court that it believed Defendants were guilty. The instruction properly informed the jury of the issues and the law, *Akinrinade*, 61 F.3d at 1288, and the district court's use of it was not erroneous.

### III.

During the second trial, Defendants moved to suppress evidence that had been seized during a search of the motel room where they had been staying when they committed the robberies. They claimed that the shotgun shells were inadmissable because the warrant did not specifically list shotgun shells as an item to be seized. Defendants also argued that because shotgun shells are not *per se* contraband, and because a shotgun was not named in the warrant, there was no readily apparent connection between shotgun shells and the crime. The district court denied this motion and admitted the shotgun shells into evidence. Defendants appeal this

decision, and raise these same arguments on appeal. We review warrantless search and seizure issues *de novo*, *Ornelas v. United States*, —— U.S. ——, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

The district court admitted the shotgun shells as evidence using the plain view doctrine announced by the Supreme Court in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), where a plurality stated that if (1) the officer is lawfully present, (2) an item not named in the warrant is in the plain view of the officer, and (3) the incriminating nature of the item is immediately apparent, the officer may seize the item without a warrant and the item need not be suppressed at trial. *Id.* at 466, 91 S.Ct. at 2038. Defendants rely on the third element of this test in their appeal, claiming that shotgun shells are not inherently incriminating. However, this element of the test has been somewhat modified, *see Texas v. Brown*, 460 U.S. 730, 741, 103 S.Ct. 1535, 1542–43, 75 L.Ed.2d 502 (1983); *Arizona v. Hicks*, 480 U.S. 321, 326, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347 (1987), and now an officer only needs probable cause to believe that the item is linked to criminal activity in order for the plain view exception to the warrant requirement to apply. *Hicks*, 480 U.S. at 326, 107 S.Ct. at 1153. In addition, this Circuit has ruled in several instances that items such as an empty ammunition box found in a search for drugs, *United States v. Cooper*, 19 F.3d 1154, 1163 (7th Cir.1994); a large amount of money found in the defendant's car after a drug transaction, *United States v. Cervantes*, 19 F.3d 1151, 1153 (7th Cir.1994); and money and maps found in a bank robbery case, *United States v. Walton*, 814 F.2d 376, 380 (7th Cir.1987), were admissible under the plain view exception. None of these items were inherently incriminating, but in connection with the crime being investigated, each item took on a suspicious nature, giving the officers probable cause to seize it. So it is here, where the crime under investigation was an armed bank robbery. The officers were directed to seize assault rifles. Ammunition such as shotgun shells, while not contraband, assumes an incriminating nature in connection with the search for

items such as assault rifles. In addition, a shotgun was used in the September 2, 1994 robbery. The officers obviously had probable cause to seize the shotgun shells under the plain view exception to the warrant requirement. The district court properly admitted the evidence.

## IV.

■ At the closing arguments of the second trial, Woodworth's counsel attempted to define the term "reasonable doubt" for the jury. The government objected, and the district court sustained that objection. Defendants appeal this decision. It is well established in this Circuit, however, that neither trial courts nor counsel should attempt to define "reasonable doubt" for the jury. *United States v. Lerch,* 996 F.2d 158, 162 (7th Cir.1993); *United States v. Glass,* 846 F.2d 386 (7th Cir.1988). The Defendants acknowledge this, and they do not offer a convincing reason why we should overturn this precedent. Therefore, we affirm the district court's ruling.

## V.

■ Defendants' final challenge is to the district court's refusal to dismiss counts 1 through 7, 10 and 11 against them after they were found guilty on counts 8 and 9. At the time of sentencing, Bruce was 55 years old and Woodworth was 66. They claim that according to the Sentencing Guidelines, their convictions on counts 8 and 9 required prison sentences that would last until Bruce was 87 and Woodworth 106 years old. Because this was longer than either of their projected life spans, they assert that the trial and sentencing on the remaining counts was unnecessary and would violate the Eighth Amendment: "A punishment is excessive ... if it is unnecessary." *Furman v. Georgia,* 408 U.S. 238, 279, 92 S.Ct. 2726, 2747, 33 L.Ed.2d 346 (1972). Defendants do not challenge the length of the sentence actually imposed, but contend that the district court erred when it denied their motion to dismiss on Eighth Amendment grounds.

Defendants moved to dismiss the remaining counts on the Eighth Amendment basis before the district court had actually sentenced them. Because there was no sentence to challenge, their objection was premature. Once Defendants were found guilty on counts 1 through 7 and sentenced on counts 1 through 9, they did not renew their objection and therefore, waived it. *See Williams v. United States,* 805 F.2d 1301, 1309 (7th Cir.1986). Thus, we review the district court's denial of Defendants' motion to dismiss for plain error. Unless the error is conspicuous and must be corrected to prevent a miscarriage of justice, *see United States v. Kerley,* 838 F.2d 932, 937 (7th Cir. 1988), we will affirm.

The district court's decision to deny Defendants' motion to dismiss was proper. The Defendants were not sentenced at the close of the trial on counts 8 and 9, so the district court could not have known for certain what the total sentence imposed would be, or that it would last longer than Defendants' projected life span. It was reasonable for the district court to require Defendants to wait until sentencing to raise an Eighth Amendment objection instead of speculating as to what the sentence would be. In addition, the presentencing report and the actual sentence imposed show that Defendants' contention that they would each be sentenced to 35 years on counts 8 and 9 was wrong. The pre-sentencing report states that the offense level for count 8 was 24, and each defendant had a criminal history category score of III, combining for a statutory range of 63 to 78 months on count 8. Count 9 would have required a 10 year consecutive sentence. Therefore, the longest sentence Defendants could have received on counts 8 and 9 was 16 years and 6 months, much less than the 35 years claimed.

Of the 75 year, one month total sentence that the Defendants each received, 65 years was required by statute. "If the statutory minimum indicates that a defendant must serve a term of years in excess of her life expectancy, courts are obligated to adhere to that express mandate." *United States v. Martin,* 63 F.3d 1422, 1434 (7th Cir.1995). There was no Eighth Amendment violation in the district court's decision to proceed with trial on counts 1 through 7 and sentence Defendants on counts 1 through 9. There

was no error, plain or otherwise, in the district court's denial of Defendants' motion to dismiss.

The district court's rulings are AFFIRMED.