In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4337

JAMES W. BRUCE,

Petitioner-Appellant,

v.

UNITED STATES OF AMERICA,

Respondent-Appellee.

Appeal from the United States District Court
for the Southern District of Indiana, Evansville Division.
No. 98 C 171--Richard L. Young, Judge.

ARGUED MARCH 6, 2001--DECIDED July 5, 2001


   Before FAIRCHILD, CUDAHY and RIPPLE,
Circuit Judges.

   RIPPLE, Circuit Judge.  James W. Bruce
appeals the denial of his motion for
post-conviction relief under 28 U.S.C.
sec. 2255. He alleges that his trial
counsel was ineffective for having failed
to investigate and call two alibi
witnesses who could have exonerated him
of involvement in two armed bank
robberies. Specifically, Mr. Bruce
contends that the district court
improperly denied him an evidentiary
hearing to resolve certain factual
disputes concerning the reasonableness of
counsel's performance. For the reasons
set forth in the following opinion, we
reverse the judgment of the district
court and remand the case for proceedings
consistent with this opinion.

I

BACKGROUND

A.

   Mr. Bruce, along with a confederate,
Murray Woodworth, was convicted of
various counts in connection with four
armed bank robberies. Those convictions
were later affirmed by this court. See
United States v. Bruce, 109 F.3d 323 (7th
Cir. 1997). We shall assume familiarity

with that opinion and repeat here only those matters necessary for an understanding of the issue now before us.

At trial, the Government attempted to show that Mr. Bruce and Woodworth followed a similar pattern in robbing four Evansville, Indiana, banks between October 1993 and February 1995. According to the Government's view, shortly before each robbery, Woodworth purchased an older vehicle and affixed to it a stolen license plate. These vehicles then were used to flee the victimized banks, but quickly were abandoned for other transportation. The prosecution also suggested that common characteristics other than the cars linked the robberies; the perpetrators carried rifles or shotguns, wore similar clothing such as trench coats or ski masks, and chose late Thursday or Friday afternoon for each holdup. The Government developed itstheory at trial by presenting the following circumstances surrounding each holdup.

For the first robbery, Woodworth purchased a 1978 black Lincoln Continental. The following day, October 29, 1993, a Friday, he and Mr. Bruce, disguised in full-face Halloween masks and long trench coats and wielding assault rifles, entered an Old National Bank branch at 2:40 p.m. and robbed the tellers of $91,500. The two men then returned to the Lincoln, drove it a short distance, and abandoned it for another car. Affixed to the abandoned Lincoln was a stolen Indiana license plate.

For the second robbery, Woodworth purchased a 1977 Dodge van. One week later, on September 2, 1994, a Friday, at 3:00 p.m., Woodworth and Mr. Bruce, using the van, robbed two Mid-West Federal Savings employees of $13,050 as they were attempting to fill an ATM machine. Woodworth was armed with a shotgun during the holdup. Mr. Bruce and Woodworth drove a short distance from the crime scene and then left the van, bearing a stolen Kentucky license plate, for other transportation.

The third robbery occurred several weeks later. On Thursday, October 27, 1994, at 2:45 p.m., the two men--one wearing a black ski mask and trench coat and carrying a handgun, the other holding an

assault rifle--robbed another Old National Bank branch of $62,456. They absconded in a brown Oldsmobile Cutlass, but soon abandoned the vehicle. Woodworth had purchased this car the previous day. It bore a stolen Ohio license plate.

The fourth robbery started out in a similar fashion. On February 8, 1995, Woodworth purchased an old blue van and bolted to it a stolen Indiana license plate. The following day (a Thursday) at 2:45 p.m., Mr. Bruce and he drove the van to another Old National Bank branch. Donning disguises (one of the men was also wearing a trench coat) and armed again with an assault rifle, they made off with $54,963. This time, however, their second vehicle broke down. Desperate for transportation, they paid $2,850 in cash for a blue pickup truck from an off-duty Henderson, Kentucky, police officer. The officer became suspicious when he noticed that the men were carrying shopping bags full of clothes, and one bag had a Minnesota license plate sticking out on top. The officer contacted the Evansville police, and, less than an hour later, police found Mr. Bruce and Woodworth parking the pickup in a storage facility. The two men had cash from the bank, assault rifles, loaded handguns and ammunition, and a bag with disguises worn during the robbery earlier that day. Police later discovered more ammunition, police scanners, and six 12-gauge shotgun shells in a Henderson, Kentucky, motel room in which the two men had been staying.

B.

Mr. Bruce and Woodworth were charged with four counts of armed bank robbery, 18 U.S.C. sec.sec. 2113(a) & (d); one count of conspiracy to commit armed bank robbery, 18 U.S.C. sec.sec. 371, 2113(a) & (d); and four counts of using a firearm during and in relation to a crime of violence, 18 U.S.C. sec. 924(c). Each was also individually charged with one count of possession of a firearm by a felon, 18 U.S.C. sec. 922(g)(1). An attorney was appointed defense counsel for Mr. Bruce.

Defense counsel obtained a severance of the counts relating to the fourth robbery from all of the other counts. Following a trial on the counts relating to the fourth robbery, defense counsel obtained

another severance that separated the counts pertaining to the first three robberies from the felon-in-possession counts. The felon-in-possession counts subsequently were dismissed by the Government.

In July 1995, Mr. Bruce and Woodworth went to trial on the charges relating to the February 9, 1995, robbery. The prosecution presented three days of testimony. Defense counsel presented no witnesses and chose only to cross-examine certain prosecution witnesses. The jury found both men guilty of armed robbery and of the use of a firearm during and in relation to a crime of violence.

The court then scheduled a second trial for February 5, 1996, on the remaining counts. On February 2, 1996, at Mr. Bruce's request, his defense counsel moved for a continuance on the ground that Mr. Bruce had identified potential exculpatory witnesses, and counsel needed time to locate them and to arrange for their appearances. The district court denied that motion on February 4, 1996, but stated that "[i]f a witness should materialize . . . Defendant Bruce will have the opportunity to move this Court to suspend proceedings until the jury can hear the alibi testimony." Trial Court ("TC") R.68 at 3.

The following morning, immediately before trial was scheduled to begin, Mr. Bruce sought permission to address the court. At his defense counsel's urging, Mr. Bruce told the court that counsel had ignored his requests to investigate certain alibi witnesses. Mr. Bruce stated that his defense counsel had visited him the previous week and "got real belligerent with me over a letter that I wrote him and explained to him that I needed my witnesses here in court." TC R.88, Vol.I (2/5/96) at 11. The court asked Mr. Bruce some general questions about witnesses he wished to call and then announced that it would not entertain any delays to the start of the second trial.

In this second trial, the Government presented its case largely through eyewitness identification of Mr. Bruce as one of the two masked perpetrators of the robberies. In Mr. Bruce's defense, his defense counsel called only one alibi

witness, William Turberville. Turberville testified that Mr. Bruce dated his daughter, Betty Thompson, from December 1993 until his arrest. Turberville said he was with Mr. Bruce at the Michigan State Fair on September 5, 1994, and he believed that he was working with Mr. Bruce at a Michigan motel on September 2, 1994, the date of the second robbery. The jury was apparently not persuaded by Turberville's testimony; it returned a verdict against Mr. Bruce and Woodworth on all remaining counts. Mr. Bruce received stiff sentences for those convictions--a total of 901 months' imprisonment.

C.

Nearly two years later, Mr. Bruce filed a pro se motion under sec. 2255 to set aside his convictions based on ineffective assistance of defense counsel. He requested an evidentiary hearing. Mr. Bruce alleged that his trial defensecounsel, who also had served as counsel on direct appeal, was ineffective for failing to investigate the proposed testimony of his alibi witnesses. The district court/1 ordered Mr. Bruce to supplement his motion with additional facts supporting his claim. In response, Mr. Bruce proffered the affidavits of Betty Thompson and Edward Barton (a former co-worker), who claimed to have been with Mr. Bruce on the days that two of the bank robberies occurred. According to Mr. Bruce, these witnesses were "very crucial to this case" because they would have given "credible testimony" of his "whereabouts," and no jury "would convict the defendant while hearing testimony of witnesses who were with the defendant on the dates in question." Post Conviction ("PC") R.2 at 9. In her affidavit, Thompson asserted that Mr. Bruce could not have committed a bank robbery in Indiana on September 2, 1994, because he was with her at the Michigan State Fair that day. She further stated that she contacted defense counsel about this matter in January 1996, one month before Mr. Bruce's second trial. Similarly, Barton stated through his affidavit that Mr. Bruce was with him on October 29, 1993 (the date of the first bank robbery), laying floor tile at a friend's house. Barton further asserted that he had been contacted by Mr. Bruce's mother while Mr. Bruce was awaiting trial and

that he had contacted defense counsel to inform him of Mr. Bruce's "whereabouts on October 29, 1993." PC R.14 at 2. Both Thompson and Barton asserted that defense counsel never contacted them about their testimony.

The Government countered with an affidavit from defense counsel to show that his decision not to investigate these witnesses was tactical. In that affidavit, defense counsel asserted that he did "not have a specific recollection" of Mr. Bruce's requesting that he call alibi witnesses, but he had a "general recollection" that Mr. Bruce suggested calling such witnesses and that they discussed this possibility. PC R.22, Ex.I at 1-2. He recalled that he "either did subpoena such witnesses or that there was a compelling reason why [he] did not or could not subpoena them." Id. at 2. Although counsel stated that he decided not to call these witnesses for "tactical reasons based upon my knowledge of the evidence and my experience as a trial attorney," nowhere in the affidavit did he identify those tactical reasons. Id.

The district court denied Mr. Bruce's request for an evidentiary hearing and the motion for postconviction relief. Relying on defense counsel's affidavit, the court stated that

the presumption that Bruce's attorney's [sic] rendered reasonably effective assistance is reinforced by the attorney's uncontested affidavit that he was aware of the possibility of calling possible alibi witnesses, that this possibility was discussed with Bruce, that there was a conscious decision made not to call the possible alibi witnesses, and that the decision not to call the possible witnesses was based on Bruce's attorney's knowledge of the evidence and experience as a trial attorney.

PC R.23 at 2. The court held that Mr. Bruce had not "overcome that presumption" and that counsel's failure to subpoena or to produce possible alibi witnesses was not ineffective under the applicable standard. Id.

We granted a certificate of appealability limited to the issue of whether Mr. Bruce was denied effective assistance of counsel. We also appointed

appellate counsel for Mr. Bruce.

II

DISCUSSION

A.

In reviewing the ineffective assistance claim, we review the district court's conclusions of law de novo, see Fountain v. United States, 211 F.3d 429, 433 (7th Cir. 2000), its factual findings for clear error, see id., and its denial of an evidentiary hearing for an abuse of discretion, see Prewitt v. United States, 83 F.3d 812, 820 (7th Cir. 1996).

Mr. Bruce contends that the district court should have granted him an evidentiary hearing on his claim that counsel was ineffective for failing to investigate Thompson's and Barton's proposed testimony. Mr. Bruce points out that defense counsel admitted in his affidavit that he did not recall these particular alibi witnesses; Mr. Bruce further notes that counsel provided no factual basis for his assertion that his decision not to subpoena or call alibi witnesses was based on his knowledge and experience as a trial attorney. Under these circumstances, Mr. Bruce argues, the district court should not have presumed that counsel's failure to investigate and call alibi witnesses was a reasoned judgment based on adequate investigation. Rather, the court should have held a hearing to resolve discrepancies in the record.

The principles governing the situation before us are well-established. A district court need not grant an evidentiary hearing in all sec. 2255 cases. Such a hearing is not required if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. sec. 2255; see also Menzer v. United States, 200 F.3d 1000, 1006 (7th Cir. 2000). In addition, a hearing is not necessary if the petitioner makes allegations that are "vague, conclusory, or palpably incredible," rather than "detailed and specific." Machibroda v. United States, 368 U.S. 487, 495 (1962); see also Prewitt, 83 F.3d at 819. A district court, however, must grant an evidentiary hearing if the petitioner

"alleges facts that, if proven, would entitle him to relief." Stoia v. United States, 22 F.3d 766, 768 (7th Cir. 1994).

B.

To prevail on a claim of ineffective assistance of counsel, Mr. Bruce must show that defense counsel's performance was so deficient as to fall below an objective standard of reasonable competence and that the deficient performance prejudiced his defense. See Strickland v. Washington, 466 U.S. 668, 687 (1984). A failure to investigate known potential alibi witnesses can satisfy the "performance" prong./2 The district court therefore was required to assess whether defense counsel sufficiently investigated the proposed alibi witnesses' testimony. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 690-91.

Here, the record simply is not adequate to permit the district court to make the determination that we have just described. There remains a question of fact as to whether defense counsel adequately assessed the potential alibi witnesses. Thompson and Barton, the potential witnesses, stated in their affidavits the specific alibi testimony that they had been prepared to give at trial. They stated unequivocally that they had contacted defense counsel prior to trial and had advised him of the specific nature of the testimony that they were prepared to give. Both testified as well that defense counsel did not contact them. Thompson noted that she had been present at trial and inquired of defense counsel why he had not contacted her. His reply was that the case against Mr. Bruce was "cut and dried." PC R.15 at 2. Mr. Bruce's affidavit states that he advised defense counsel of the witnesses' names and addresses and the substance of their expected testimony. In the face of these affidavits, defense counsel submitted an affidavit that charitably can be

characterized as conclusory. We set out in full the operative paragraph:

4. Mr. Bruce also asserts that I failed to call certain alibi witnesses. I do not have a specific recollection of Mr. Bruce requesting that I call alibi witnesses, but do have a general recollection that he suggested and we did discuss the possibility of calling such witnesses. I did not fail to investigate and attempt to locate the alibi witnesses suggested by Mr. Bruce. My recollection is that we either did subpoena such witnesses or that there was a compelling reason why we did not or could not subpoena them. In any case, the decision not to call alibi witnesses was made for tactical reasons based upon my knowledge of the evidence and my experience as a trial attorney.

PC R.22, Ex.1 at 1-2.

Despite the specific allegations by Barton, Thompson, and Mr. Bruce, defense counsel claims in his affidavit that he has no specific recollection of Mr. Bruce's having asked that alibi witnesses be called and has only a general recollection of a discussion on the subject. He further contradicts the statements of the potential witnesses that he failed to locate or investigate these witnesses. He cannot remember why the witnesses were not called, but instead relies, with absolutely no factual support, on "tactical reasons based upon my knowledge of the evidence and my experience as a trial attorney." Id. at 2. Because Mr. Bruce's only defense was an alibi, defense counsel's decision to forgo interviewing potential alibi witnesses cannot be considered, without some factual basis, a tactical choice entitled to deference.

Despite the conflicting affidavits and defense counsel's conclusory assertions, the district court characterized defense counsel's testimony as "uncontested" and upheld the decision not to call alibi witnesses as "sound trial strategy" that was made "after a reasonable investigation." PC R.23 at 2. Without any factual basis for defense counsel'sassertions and in light of the affidavits of the potential defense witnesses, the district court had no basis upon which to arrive at this conclusion without holding a hearing./3

C.

Even if we were to assume that Mr. Bruce can show that counsel's performance was deficient, there would be no need for a remand unless Mr. Bruce can also show that counsel's sub-par performance prejudiced his defense. See Strickland, 466 U.S. at 693-94. Prejudice requires Mr. Bruce to establish a "reasonable probability" that counsel's failure to investigate and call Thompson and Barton affected the trial's outcome. United States v. Morrison, 946 F.2d 484, 500 (7th Cir. 1991); see also Foster v. Ward, 182 F.3d 1177, 1185 & n.1 (10th Cir. 1999) (citing cases to show that the prejudicial effect of failing to investigate alibi testimony is not subject to a per se rule, but must instead be determined on a case-by-case basis). Because the district court found counsel's assistance to be reasonably effective, it did not discuss the question of prejudice other than to mention, in conclusory fashion, that Mr. Bruce "received a fair trial." PC R.23 at 3.

Mr. Bruce argues that the testimony of Thompson and Barton would have proved that he was with them in Michigan during the armed bank robberies that took place in Indiana on October 29, 1993, and September 2, 1994. The Government, on the other hand, has not attempted to undertake any sort of prejudice analysis; its written submissions to both the district court and this court focus exclusively on Strickland's performance inquiry. Although we note that the Government's case at trial relied heavily on eyewitness identification of Mr. Bruce as one of two masked perpetrators of the robberies, we decline to resolve the prejudice issue here. In our view, the district court should have the opportunity in the first instance to assess "what information would have been obtained from [a reasonable] investigation and whether such information, assuming its admissibility in court, would have produced a different result." United States ex rel. Cross v. DeRobertis, 811 F.2d 1008, 1016 (7th Cir. 1987).

What the district court discovers on remand after a full examination of

counsel's performance may well "shed a valuable cross-light" upon the prejudice inquiry: If the alibi witnesses' testimony had been favorable to Mr. Bruce, the district court will have to weigh on remand "whether, in light of the defense's theory of the case, its omission was so central as to establish the probability that the jury would not have returned a finding of guilt." Id. at 1013, 1017; see also Hendricks v. Vasquez, 974 F.2d 1099, 1110 (9th Cir. 1992) ("[A]ssuming the performance was deficient, we cannot determine, without the benefit of an evidentiary hearing, whether that performance had any probable effect on the outcome."); Lawrence v. Armontrout, 900 F.2d 127, 131 (8th Cir. 1990) (remanding for an evidentiary hearing "to determine whether trial counsel's failure to investigate and call alibi witnesses prejudiced Lawrence's defense"). Testimony by defense counsel and the alibi witnesses presumably will enable the court to assess the adequacy of the representation afforded Mr. Bruce and to determine whether that representation was prejudicial.

Conclusion

On this record, the district court should have conducted an evidentiary hearing on Mr. Bruce's claim of ineffective assistance of counsel for failure to investigate. Accordingly, the judgment of the district court is reversed, and the case is remanded for proceedings consistent with this opinion.

REVERSED and REMANDED

FOOTNOTES

/1 The judge who presided over the sec. 2255 proceedings was not the judge who had presided over the criminal trial.

/2 See Washington v. Smith, 219 F.3d 620, 629-31 (7th Cir. 2000) (performance prong met when counsel failed to produce critical alibi witness at trial; counsel made only "minimal attempts" to contact witness before trial and waited to subpoena her until two days before she was to testify, despite knowing that she was "hard to reach"); Montgomery v. Petersen, 846 F.2d 407, 413-14 (7th Cir. 1988) (performance prong met when counsel failed to investigate the "only disinterested witness in the case," a store clerk from whom petitioner allegedly purchased bicycle

on day of robbery) (emphasis in original); see also Brown v. Myers, 137 F.3d 1154, 1156-57 (9th Cir. 1998) ("no dispute" that performance prong was met when counsel failed to investigate petitioner's alibi claim or present any alibi witnesses to corroborate his testimony); Hadley v. Groose, 97 F.3d 1131, 1135 (8th Cir. 1996) (performance prong satisfied when counsel "made no effort" to investigate potential alibi witness whose name was provided by defendant); Bryant v. Scott, 28 F.3d 1411, 1415-18 (5th Cir. 1994) (performance prong met when counsel failed to investigate and interview potential alibi witnesses, even though witnesses' names were not made available to counsel until pretrial hearing three days before trial); Griffin v. Warden, Md. Corr. Adjustment Ctr., 970 F.2d 1355, 1358 (4th Cir. 1992) (performance prong "easily met" when counsel failed to contact robbery defendant's alibi witnesses); Code v. Montgomery, 799 F.2d 1481, 1483-84 (11th Cir. 1986) (performance prong met when counsel's sole strategy was to present alibi defense, but he terminated his pretrial investigation "without determining whether the one witness he contacted could provide an alibi").

/3 Cf. Clark v. Redman, No. 86-2050, 1988 WL 138971, at *4 (6th Cir. Dec. 28, 1988) (unpublished order) (counsel's statement regarding "normal practice" of investigating potentially exculpatory witnesses is irrelevant to issue whether he had contacted alibi witnesses in this case).