**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ralph A. HERNANDEZ, Defendant–
Appellant.**

**No. 01–2315.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 8, 2002.

Decided May 2, 2002.

Before POSNER, COFFEY, DIANE P. WOOD, Circuit Judges.

## ORDER

Ralph A. Hernandez was charged and found guilty of knowingly and unlawfully possessing a firearm with the manufacturer's serial number obliterated or altered, in violation of 18 U.S.C. § 922(k), and being a felon knowingly and unlawfully in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Hernandez was sentenced to 120 months of incarceration on the latter charge and thirty months of incarceration on the former charge, with the sentences to run consecutively to each other, for a total of 150 months imprisonment. Hernandez appeals. We affirm.

## I.

Wisconsin Department of Justice Special Agent Edward F. Wall met and became acquainted with Defendant Ralph A. Hernandez during the year 2000, while posing as an undercover motorcycle wholesaler. Over the course of their meetings, Wall received information that Hernandez was selling firearms in the Breakaway Bar in Sparta, Wis., where Hernandez was a regular patron. Wall and another special agent, Jennifer J. Price, devised an undercover sting operation to investigate Hernandez's alleged gun dealing. Specifically, on the evening of December 6, 2000, the Department fitted Agent Price with a digital audio transmitter and recorder, and Price and Wall thereafter entered the tavern and struck up a conversation with Hernandez. Wall told Hernandez that he was traveling to Eau Claire, Wis., in order to collect a $30,000 debt owed to him. Wall proceeded to complain that he has had troubles collecting this debt and "was

afraid that he'd have to get rough with the guy to try and get the money out of him."

Wall further lamented that he was unable to purchase a gun because he was a convicted felon. "Immediately after hearing this information," according to Wall, "Hernandez said to me, 'I can get you a throwaway,'" referring to the fact that Hernandez could obtain a firearm with obliterated serial numbers that is nearly untraceable by law enforcement officers. Hernandez added that he could obtain a .32–caliber revolver for Wall for $100. Wall then offered to pay Hernandez twice that amount, or $200, in order to insure that Hernandez obtain the weapon immediately. Hernandez pocketed the money and proceeded to speak with another patron of the bar, Ulysses E. Villanova. Villanova departed the tavern shortly after his conversation with Hernandez, saying that he was going to another bar in the area but would return as soon as possible.

During the time frame between Villanova's departure and return, Hernandez and Wall engaged in idle chit-chat but at one point, Hernandez informed Wall of a pawn shop in the area that sold firearms to customers without conducting the background checks required by federal law. After approximately thirty minutes, Villanova returned to the bar and asked to speak privately with Hernandez. After their conversation, Villanova walked into the bar's small, one-person restroom. Meanwhile, Hernandez approached Wall, telling him that Villanova obtained a firearm and was placing it inside a box that he was leaving in the restroom. Hernandez further instructed Wall to follow Villanova into the restroom and retrieved the weapon. Wall did follow Villanova into the room and picked up the weapon that Villanova had apparently placed on the floor. Wall then returned to the tavern and spoke briefly with Hernandez, who thanked Wall for his business and wished

him well in the future. Thereafter, Wall and Price departed the tavern.

Two weeks later, on December 20, 2000, a grand jury returned a two-count indictment against Hernandez, charging him with: (1) knowingly and unlawfully possessing a firearm with the manufacturer's serial number obliterated or altered, in violation of 18 U.S.C. § 922(k); and (2) being a felon knowingly and unlawfully in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The case proceeded to trial, and Hernandez was found guilty on both counts.

At the sentencing hearing held May 14, 2001, the district court adopted the recommendations contained in the Pre–Sentence Investigation Report and concluded that Hernandez's base offense level was 20, due to his prior felony conviction for committing a residential burglary in 1990. The court then added two points, pursuant to U.S.S.G. § 2K2.1(b)(4), because the weapon obtained by Hernandez had an obliterated serial number. The court added four more points, pursuant to § 2K2.1(b)(5), because the court found that Hernandez had reason to believe that the gun would be used in connection with another felony offense, i.e., Wall's supposedly impending encounter with a violent debtor. Thus, the total offense level was 26. With his criminal history, Hernandez was classified in Category VI, with the resulting guideline range being 120–150 months. The court sentenced Hernandez to a 120–month term of incarceration for violating § 922(g)(1) and a 30–month term of incarceration for violating § 922(k). The court further ordered that the sentences run consecutively with each other, pursuant to U.S.S.G. § 5G1.2(d).

## II.

### A.

The first issue we address is whether the district judge misapplied the relevant

sentencing guidelines and improperly increased Hernandez's overall sentence. We review the district court's legal interpretation and application of the Sentencing Guidelines *de novo. United States v. Parolin,* 239 F.3d 922, 928 (7th Cir.2001); *United States v. Nobles,* 69 F.3d 172, 190 (7th Cir.1995).

 Hernandez concedes that the Guidelines authorize a sentence of 120 to 150 months imprisonment for an individual with an offense level of 26. He also acknowledges that the district judge was required to order that the sentence for violating § 922(k) run consecutively to the sentence for violating § 922(g)(1), given the fact that the trial judge decided to impose less than the statutory maximum of 150 months on the latter violation. U.S.S.G. § 5G1.2(d); *United States v. Pollard,* 72 F.3d 66, 69 (7th Cir.1995). Hernandez's sole argument is that it was improper for the trial judge to impose a two-level enhancement under U.S.S.G. § 2K2.1(b)(4) for possession of a weapon with an obliterated serial number, given that Hernandez's sentence also was increased by the fact of his conviction under § 922(k), which criminalizes the possession of a firearm with an obliterated serial number. In Hernandez's own words: "Imposition of consecutive sentences was mandatory in this case because of the conviction for possessing a firearm with an obliterated serial number. Therefore, it was not proper for the district court also to enhance the base offense level based on the specific offense characteristic of possessing a firearm with an obliterated or altered serial number." (Appellant's Br. at 25–26.)

We reject Hernandez's argument, for it contradicts the very language of the applicable sentencing guideline. The application notes to U.S.S.G. § 2K2.1 provide for a two-level enhancement for any crime involving a firearm that is stolen or has an altered or obliterated serial number. The only exception to this rule is contained in Note 12 of the Application Notes to the Commentary for § 2K2.1, which states:

> [I]f the offense to which § 2K2.1 applies is 18 U.S.C. § 922(k) ... and the base offense level is determined under subsection (a)(7), do not apply the adjustment in subsection (b)(4) unless the offense involved a stolen firearm or stolen ammunition. This is because the base offense level takes into account that the firearm had an altered or obliterated serial number.

The plain language of the Sentencing Guidelines is clear and unambiguous, and as such, we are obligated to follow the Guidelines. *United States v. Lovaas,* 241 F.3d 900, 903 (7th Cir.2001); *United States v. Andreas,* 216 F.3d 645, 676 (7th Cir. 2000).

In this case, the plain language of the relevant guidelines calls for a two-level enhancement, for Hernandez's base offense level was determined not under subsection (a)(7) but under (a)(4)(a), which provides a base level of 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." Hernandez's prior residential burglary constituted a "crime of violence" sufficient to trigger an enhancement. Furthermore, in this situation, unlike the two cases cited by Hernandez, *United States v. Binford,* 108 F.3d 723, 728 (7th Cir.1997); *United States v. Jackson,* 103 F.3d 561, 569 (7th Cir. 1996), the base offense level does not enhance for the obliterated serial number on the revolver. Thus, we conclude that Hernandez's argument is without merit, for he was ineligible for any exception to U.S.S.G. § 2K2.1. *United States v. Ortiz,* 64 F.3d 18

(1st Cir.1995); *see also United States v. Ahmad,* 202 F.3d 588, 592 (2d Cir.2000).

### B.

The next issue we address is whether the district judge erred when refusing to give two jury instructions requested by Hernandez, namely: (1) an instruction summarizing Hernandez's theory of defense; and (2) an instruction that provided the jury with a definition of the legal term "reasonable doubt." We review the court's refusal to summarize Hernandez's theory of defense *de novo. United States v. Irorere,* 228 F.3d 816, 825 (7th Cir.2000); *United States v. Meyer,* 157 F.3d 1067, 1074 (7th Cir.1998). We review for an abuse of discretion the trial judge's refusal to read a definition of "reasonable doubt" to the jury. *United States v. Collins,* 223 F.3d 502, 507 (7th Cir.2000).

### 1.

■ We begin by examining the proposed theory of defense instruction that Hernandez submitted to the district judge at the pre-trial conference. Hernandez requested that the trial judge instruct the jury as follows (with emphasis supplied where appropriate):

> If you determine that Mr. Hernandez acted *merely as a provider of information and facilitator* of the purchase of a gun with an obliterated or altered serial number *without his possessing the gun with an obliterated serial number or exerting control over it,* then *you must* find him not guilty of possessing a firearm, which had the manufacturer's serial number obliterated or altered. If, however, you determine that Mr. Hernandez did more than provide information and facilitate the purchase of the gun by possessing it or exerting control over the firearm with an altered or obli-

terated serial number, then you must find him guilty.

The district judge refused to give this instruction, finding that it failed to accurately state the law. We agree with the trial judge, for we are convinced that Hernandez's proposed instruction ignores the relevant case law in this Circuit, which makes clear that a defendant who facilitates the purchase of a weapon may, in fact, violate both 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 922(k).

■ We have long held that the "ability to assure delivery [of illegal contraband] is enough, in combination with association with actual possessors, to convict of constructive possession" because "he who can assure the delivery of goods controls it." *United States v. Manzella,* 791 F.2d 1263, 1267 (7th Cir.1986). *Cf. United States v. Buchmeier,* 255 F.3d 415, 426 (7th Cir. 2001). Hernandez's proposed jury instruction, as written, advises the jury that it *has no choice but to acquit* if it finds that he merely provided information and facilitated the transaction without controlling the weapon. This is a misstatement of the law, for a defendant who provides information or facilitates a transaction may be found guilty of constructive possession, even if he lacks physical control over the weapon, provided that he is able to "assure the delivery" of the weapon. *Manzella,* 791 F.2d at 1267.

Furthermore, it is important to note that the trial judge charged the jury on the definition of "possession" with the following pattern instruction: "Possession of an object is the ability to control it. Possession may exist even when a person is not in physical contact with the object, but knowingly has the power and intention to exercise direction or control over it, either directly or through others." Although Hernandez argues that this jury charge failed to elucidate the standard for con-

structive possession, the charge almost identically tracks the above-quoted language from *United States v. Alanis,* 265 F.3d 576, 592 (7th Cir.2001), and *United States v. Walls,* 225 F.3d 858, 867 (7th Cir.2000)—cases that are of undisputed vitality within this Circuit. We are convinced that the court's instruction was proper and that the court's recitation of the applicable law to the jury was proper. *See, e.g., United States v. Smith,* 131 F.3d 685, 688 (7th Cir.1997) (commenting favorably on trial court's use of pattern jury instruction); *United States v. Walker,* 25 F.3d 540, 547 (7th Cir.1994) (same). We conclude that Hernandez did not suffer any prejudice by the court's failure to tender his proposed instruction, which would have been redundant, if given in conjunction with the pattern instruction, even if it had accurately stated the law, *see United States v. Manjarrez,* 258 F.3d 618, 626 (7th Cir.2001); *United States v. Green,* 779 F.2d 1313, 1320 (7th Cir.1985)—which it did not.

## 2.

■ We next examine Hernandez's claim that the trial judge abused his discretion when refusing to give to the jury any definition of "reasonable doubt." "[T]he district court is given substantial discretion with respect to the precise wording of jury instructions, so long as the instruction completely and correctly states the law." *Savino v. C.P. Hall Co.,* 199 F.3d 925, 934 (7th Cir.1999). Although the Supreme Court has held that trial courts may, in their discretion, instruct the jury on reasonable doubt, *Victor v. Nebraska,* 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), we have long held that courts are not required (and indeed are discouraged) from giving such instructions, for the phrase "reasonable doubt" is well understood and certainly is neither confusing nor ambiguous when used, and needs no further explanation or explication. *See, e.g., United States v. Bruce,* 109 F.3d 323, 329 (7th Cir.1997) (stating that neither trial courts nor counsel should attempt to define "reasonable doubt"); *United States v. Hanson,* 994 F.2d 403, 408 (7th Cir. 1993) (stating that attempts to define reasonable doubt present risk without any real benefit); *United States v. Langer,* 962 F.2d 592, 600 (7th Cir.1992) (stating that "reasonable doubt" is a self-explanatory concept and further definition would confuse the jury); *United States v. Hall,* 854 F.2d 1036, 1039 (7th Cir.1988) (stating that "reasonable doubt" definitions are unhelpful to a jury and potentially impair a defendant's constitutional right to have the government prove each element beyond a reasonable doubt).

■ In *Bruce,* the defendants acknowledged our long line of precedent that discourages giving "reasonable doubt" instructions to a jury, and the defendants failed to "offer a convincing reason why we should overturn this precedent." 109 F.3d at 329. Thus, we rejected the challenges that they raised. *Id.* In this case, Hernandez has similarly failed to offer any reasons to justify setting aside our prior holdings. Thus, we hold that the district court acted within its discretion by refusing to instruct the jury on "reasonable doubt." *Id.*

## C.

■ The final issue raised by Hernandez is whether the district court violated Federal Rule of Evidence 404(b) by admitting four pieces of evidence, which we describe below. We review a trial judge's evidentiary rulings for an abuse of discretion. *United States v. Hunt,* 272 F.3d 488, 494 (7th Cir.2001); *United States v. Dominguez,* 992 F.2d 678, 680–81 (7th Cir. 1993). " 'The district court's determination of the admissibility of evidence is

treated with great deference because of the trial judge's firsthand exposure to the witnesses and the evidence as a whole, and because of his familiarity with the case and ability to gauge the likely impact of the evidence in the context of the entire proceedings.' " *Okai v. Verfuth*, 275 F.3d 606, 610 (7th Cir.2001) (quoting *United States v. Denberg*, 212 F.3d 987, 992 (7th Cir. 2000) (quoting *United States v. Curry*, 79 F.3d 1489, 1495 (7th Cir.1996))). "Because of the special deference we give to the trial judge's evidentiary rulings, we will not reverse unless 'the record contains no evidence on which [the trial judge] rationally could have based [his] decision.' " *Id.* (quoting *United States v. Walton*, 217 F.3d 443, 449 (7th Cir.2000)).

Hernandez challenges the district court's admission of the following evidence: (1) his statement offering assistance to Wall in collecting the $30,000 debt supposedly owed him; and (2) his statement to Wall regarding knowledge of a local pawn shop that sold firearms without conducting background checks. Hernandez argues that this evidence was inadmissible for any purpose. The Government responds that the evidence either was admissible under the "intricately related" doctrine, *United States v. Ryan*, 213 F.3d 347, 350 (7th Cir.2000), or under Rule 404(b) of the *Federal Rules of Evidence*. As we explain below, we fail to perceive any abuse of discretion with the judge's decision to admit the evidence under Rule 404(b), for we are convinced that it tended to help establish or demonstrate that Hernandez regularly trafficked in illegal weapons and, thus, negated his theory of defense that he was merely a broker of information as to where firearms could be obtained from third party sources.[1] FED. R. EVID. 401.

■ Rule 404(b) allows the Government to introduce evidence of prior bad acts if it is relevant to an understanding of the defendant's "motive, opportunity, intent, preparation, plan, knowledge, identify, or absence of mistake or accident" in committing the offenses charged in the indictment. When confronted with the Government's argument that he agreed to help Wall find an obliterated firearm in exchange for $200, Hernandez advanced a theory of defense that he was but an information broker, not a gun dealer. Assuming this to be true, the evidence nonetheless demonstrated that Hernandez had knowledge of where he could obtain a firearm with obliterated serial numbers. It is a question of fact whether Hernandez asked for $200 in exchange for information or in exchange for a gun. A jury could have drawn the inference that Hernandez was eager to help another convicted felon protect himself against a debtor, even by secretly purchasing an weapon from a local gun shop trafficking in illegal weapons. In other words, when viewed in the context of the record as a whole, the statements could be viewed as evidence that Hernandez: (1) was willing to distribute guns to Wall; (2) knew how and where to obtain guns with obliterated serial numbers; or (3) had a motive and opportunity to do so. *See United States v. Best*, 250 F.3d 1084,

---

1. Hernandez questions whether the trial judge admitted the evidence under the intricately related or under Rule 404(b). At one point in the record, the judge stated that Hernandez's statements are "harmless background" material, thus suggesting that he admitted the evidence under the inextricably intertwined doctrine. But at another place in the record, the judge stated that he did not know "if all of what [a witness] had told me is what we call inextricably intertwined ... but it does seem to me that this [evidence] is not at all prejudicial," thus suggesting that he admitted the evidence under Rule 404(b) and refused to exclude the evidence under Rule 403. Because we hold that the evidence was properly admitted under Rule 404(b), we need not determine whether the evidence would have been admissible under the intricately related doctrine.

1091 (7th Cir.2001); *see also United States v. Neeley,* 189 F.3d 670, 682–83 (7th Cir. 1999). All of these issues were placed at issue by Hernandez's theory of defense. Thus, we fail to perceive any abuse of discretion with the trial court's treatment of Hernandez's statements.

 In any event, even if we were to agree with the argument that Hernandez's statements should have been excluded under Rule 403, we would conclude beyond reasonable doubt that any such error was harmless because of the overwhelming evidence of Hernandez's guilt, as detailed in Part I. *See, e.g., United States v. Whitaker,* 127 F.3d 595, 602–03 (7th Cir.1997). The record established that Hernandez sympathized with Wall and was willing to help him obtain a weapon in exchange for $200. Hernandez asked his friend, Villanova, to leave the tavern and obtain an obliterated firearm. Villanova acquiesced in Hernandez's request and returned with such a weapon within sixty minutes. Under Hernandez's watchful eye and direction, Villanova placed the weapon in the tavern's remote restroom, which had been temporarily closed to the public, and Wall subsequently retrieved the weapon and left the tavern with Hernandez's blessing. Based on these facts and the record as a whole, any rational jury would have found Hernandez guilty of the crimes charged in the indictment, and none of the trial judge's rulings affected this inevitable verdict. *Manzella,* 791 F.2d at 1267.

### III.

The judgment of the district court is AFFIRMED.